# AGREEMENT

THIS AGREEMENT, made and entered into this 9th day of July, 1991 by and between the Town of Richmond, Rhode Island, a municipal corporation (hereinafter referred to as "Richmond") and the Town of Hopkinton, Rhode Island, a municipal corporation (hereinafter referred to as "Customer").

W I T N E S S E T H:

WHEREAS, Customer desires to purchase potable water from Richmond for its Hope Valley Water System for a period of years; and

WHEREAS, Richmond desires to furnish such potable water to Customer under certain terms and conditions; and

WHEREAS, both Customer and Richmond want the terms and conditions under which Richmond will furnish potable water to the Customer to be set forth herein.

NOW, THEREFORE, in consideration of the promises and of the covenants and agreements hereinafter set forth, and for other good and valuable consideration, receipt whereof is hereby mutually acknowledged, and intending to be legally bound, the parties hereto covenant and agree as follows:

1. Richmond agrees to furnish and deliver potable water to Customer, at a meter location on Route 138 at the Richmond/Hopkinton Town line. The water so provided shall service a maximum of 65 users through a 3/4" meter within the Wastewater Management District designated by Customer as comprising the Hope Valley System and listed by plot and lot number in Exhibit A, attached hereto and incorporated herein and the Hope Valley School.

2. All valves, connections, meters and appurtenances necessary to make and maintain the connection between Richmond and the Customer will be furnished, installed, and maintained at Customer's sole cost and expense, to specifications prepared and provided, or approved in advance, by Richmond.

3. Any replacements, together with construction costs of the necessary meter, meter pit and appurtenances, which may be required from time to time shall be the sole responsibility of, and at the sole cost and expense of, the Customer. Customer grants to Richmond the right to inspect the aforesaid meter, meter pit and connections at all times, and, if necessary, to replace or repair them and any expenditures incurred by Richmond shall be promptly reimbursed by Customer upon presentation of invoices. Customer agrees to maintain the facilities at the connection, as well as its own transmission lines, in good, serviceable condition. The distributions system of the Customer shall be approved by Richmond to insure compatibility and overall integrity of the system. Richmond reserves the right to reject any equipment, pipe, valves, or appurtenances within the Customer's delivery system as it deems necessary to insure the integrity of the complete water system.

4. Richmond and Customer understand and agree that in order for Richmond to supply Customer with water without risk to quality and supply, it is necessary that Richmond install a "back-up" or auxiliary well, in addition to its current well. Customer, therefore, agrees to contribute to the cost of said

well. The amount of said contribution to be determined as follows:

a) Customer to determine the cost of the meter and its installation on the Town line as aforesaid;

b) Richmond to determine the cost of the "back-up" well installation;

c) The sum of (a) and (b) above to be calculated and multiplied by .55;

d) The cost identified in (a) to be subtracted from the product in (c) and that sum being the price paid Richmond.

5. Customer will pay for all metered water according to the following schedule:

a) an annual service fee of $7,000.00 shall be charged annually for the first five (5) years of this agreement, except as otherwise provided herein. Such fee shall be full payment for the meter fee and the base water allocation. Whatever payment is made by Customer toward the "back-up" well installation as provided for in Paragraph 4, above, shall be credited annually toward said annual service fee at the rate of $7,000 per year until the amount so paid is totally credited. (i.e. if the payment made is $49,000, then in that event, the annual fee shall be deemed paid for a period of seven years)

After the conclusion of the first five (5) years of this agreement or the total application of the above described credit, whatever occurs later, the annual fee shall be a rate proportional to that of the base service fee charged by Richmond to its residential customers serviced with a 3/4" meter. Customer's annual service fee shall be calculated as the product determined by multiplying the annual Richmond residential service fee (3/4" meter service) by 0.34 and multiplying the product by 257. The fee shall be determined by Richmond. The initial service fee shall be due in full within seven (7) days of Customer initially activating its water system and each year thereafter on the anniversary of this agreement.

The base water allocation shall be determined by the number of customer meters installed by the Customer multiplied by 30,000 gallons. The base allocation shall be determined by written documentation of the number and location of meters installed by the Customer on a quarterly

basis. The Customer base allocation shall be based on the most recent quarterly meter report.

b) The rate structure for usage over the base allocation shall be .003 cents per gallon.

c) In addition to the payments provided for in Paragraphs (a) and (b) next preceding, Customer shall pay to Richmond a proportional share of any and all capital expenditures and/or maintenance costs expended or incurred by Richmond in the operation of its water system in conjunction with service to the Town of Hopkinton (except for the "back-up" well which is separately addressed above). Except in an emergency, Richmond shall notify Customer 30 days in advance of its intention to make such capital expenditures and/or incur such maintenance expenses, but the decision to make such capital expenditures or incur such maintenance costs shall be solely Richmond's. Payment shall be due from Customer within 90 days of billing by Richmond.

Proportional share, for the purpose of computing charges allocable to Customer, shall mean a percentage computed by dividing the total number of gallons pumped by Richmond in the twelve months just passed by the total number of gallons metered to the Customer in the twelve months just passed. Said percentage shall then be multiplied against the dollar amount of capital expenditures and/or maintenance expenses. In the event such expenditures are made within the first twelve months of the life of this agreement, then reasonable usage projections shall be made by Richmond in determining the charges allocable to Customer.

6. Any water distribution installation, the water use of which is intended for purposes other than domestic consumption, shall first require approval in writing from the Town of Richmond, which approval the Town of Richmond shall not unreasonably withhold. The Town of Richmond approves installation to the properties listed in Exhibit A, provided 3/4" meter is used and also approves installation to the Hope Valley School, provided hosever, that metering and service to Hope Valley School shall not be used in the determination of the base allocation.

Distribution installations for the purpose of providing fire protection shall be subject to the initial meter charges and annual maintenance fees determined from time to time by the Richmond Water Board at the same rates as they apply in Richmond provided, however, in no case shall such installations be used in the determination of the base allocation.

7. Richmond will render bills for the usage fees quarterly in arrears and such bills are due and payable when rendered. The quantity of water sold to Customer shall be ascertained by a meter reading made on a quarterly basis. Bills remaining unpaid for longer than thirty (30) days from billing date shall accrue interest at the rate of ninety (90%) percent of the average prime interest rate posted at The washington Trust Company over the preceding thirty (30) days.

8. Customer agrees to make all records relative to the Hope Valley System available to Richmond at all reasonable times during regular business hours upon ten (10) days written notice in advance of such inspection.

9. Customer agrees that the Hope Valley System shall not be expanded beyond the users specified in Exhibit A and Hope Valley School without the prior written consent of Richmond.

10. Customer agrees that it will make no claims against Richmond for damages due either to the pressure or quantity of water furnished hereunder in the event that Richmond should be prevented from furnishing the same for any reason whatsoever. In the event of fire in the area served by Customer, the Customer is

to receive such supply of water as shall then be available, and no more. Customer acknowledges and agrees that Richmond is not, in any manner, an insurer of property or persons; and has not undertaken to extinguish fires or to protect any persons or property against loss or damage by fire or otherwise; and, that it shall be free and exempt from any and all claims by Customer or any third party or property owner for damages on account of any injury to property or persons by reason of fire, water, or failure to supply water or pressure in case of fire or other catastrophe.

11. Customer and Richmond agree this contract shall remain in full force and effect for fifteen (15) years from the date hereof, and shall continue in effect thereafter until notice of cancellation is furnished in writing by either party to the other which shall specify a cancellation date no earlier than two (2) years from the date of said notice of cancellation.

12. Performance hereunder by the parties hereto is subject to and expressly conditioned upon approval of the Water Resources Board of the State of Rhode Island; any and all other permits that either party may need to receive from the State of Rhode Island for the purposes contemplated herein; and the obtaining of grants by the Town of Hopkinton in such amounts as will require it to expend from bond sources no more than $100,000.00 for the water extension, including the main transmission line, laterals, meter and meter pit and contributions to the "back-up" well as contemplated herein.

13. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto by notification to the other party that such an assignment is to be made.

14. No modifications, amendments or supplements to this agreement shall be effective for any purpose unless in writing signed by each party. Whenever any approval or consent of a party hereto must be obtained, pursuant to any provision of this agreement, such approval or consent shall not be unreasonably withheld or delayed. Failure by Customer to adhere to any part of this agreement shall result in Richmond having the right to terminate the agreement with 180 days notice.

ATTEST: Jeanette F. Aldrich, CMC, Town Clerk

Town of Richmond

By Eleanor Davis

Its: Town Council President

ATTEST: Joyce Bailey

Town of Hopkinton

By Robert Corrigan Jr.

Its: TOWN COUNCIL PRESIDENT

RECEIVED JAN 3 1994

**AMENDMENT TO AGREEMENT**

That certain Agreement by and between the Town of Richmond, Rhode Island ("Richmond") and the Town of Hopkinton, Rhode Island ("Customer") dated July 9, 1991, and providing for the furnishing and delivery of potable water by Richmond to Customer is hereby amended as follows:

1. Paragraph 1 is amended to read as follows:

1. Richmond agrees to furnish and deliver potable water to Customer, at a meter location on Route 138 at the Richmond/Hopkinton Town line. The water so provided shall service a maximum of 67 users through a 3/4" meter within the Wastewater Management District designated by Customer as comprising the Hope Valley System and listed by plot and lot number in Exhibit A, attached hereto and incorporated herein and the Hope Valley School. **The use of meters in excess of 3/4" is permitted, subject to the approval of the Manager pursuant to the Richmond Water Supply Regulations. All references to a 3/4" meter in this agreement shall mean "Service Pipe Size 3/4"; Meter Size 5/8"" as set forth in the said Richmond Water Supply Regulations.** 67 users

2. Paragraph 5 (a) is amended to read as follows:

(a) An annual service fee of $7,000.00 shall be charged annually for the first five (5) years of this agreement, except as otherwise provided herein. Such fee shall be full payment for the meter fee and the base water allocation. Whatever payment is made by Customer toward the "back-up" well installation as provided in Paragraph 4, above, shall be credited annually toward said annual service fee at the rate of $7,000.00 per year until the amount so paid is totally credited. (i.e., if the payment made is $49,000.00, then in that event, the annual fee shall be deemed paid for a period of seven years.)

After the conclusion of the first five (5) years of this agreement or the total application of the above described credit, whatever occurs later, the annual

fee shall be a rate proportional to that of the base service fee charged by Richmond to its residential customers services with a 3/4" meter **or meter in excess of 3/4" where applicable.** Customer's annual service fee shall be calculated as the product determined by multiplying the annual Richmond residential service fee (3/4" meter service **where applicable**) by 0.34 and multiplying the product by 257. The fee shall be determined by Richmond. The initial service fee shall be due in full within seven (7) days of Customer initially activating its water system and each year thereafter on the anniversary of this agreement.

The base water allocation shall be determined by the number of customer meters installed by the Customer multiplied by 30,000 gallons. The base allocation shall be determined by written documentation of the number and location of meters installed by the Customer on a quarterly basis. The Customer base allocation shall be based on the most recent quarterly meter report.

3. Paragraph 6 is amended to read as follows:

6. Any water distribution installation, the water use of which is intended for purposes other than domestic consumption, shall first require approval in writing from the Town of Richmond, which approval the Town of Richmond shall not unreasonably withhold. The Town of Richmond approves installation to the properties listed in Exhibit A, provided 3/4" meter is used or**, meters in excess of 3/4" if approved by the Manager pursuant to the Richmond Water Supply Regulations;** and also approves installation to the Hope Valley School, provided however, that metering and service to Hope Valley School shall not be used in the determination of the base allocation. Distribution installations for the purpose of providing fire protection shall be subject to the initial meter charges and annual maintenance fees determined from time to time by the Richmond Water Board at the same rates as they apply in Richmond, provided, however, in no case shall such installations be used in the determination of the base allocation.

4. Exhibit A to the Agreement is amended to include the following parcels of real property:

Hopkinton Tax Assessor's Map 27
Lot 55
Lot 100;

upon the inclusion of said parcels by the Town of Hopkinton within its Waste Water Management District.

5. In all other respects, said Agreement shall remain in full force and effect.

Attest: Patricia A. Vallerie

12/21/93
Dated:

Town of Richmond

Richard A. Mowchan
By:
its ________________,
duly authorized

Attest: Jennifer F. Aldrich, CMC

12-22-1993
Dated:

Town of Hopkinton

By:
its ________________,
duly authorized

SEP 1 7 1993

**EXHIBIT A to Agreement by and between the Town of Richmond and the Town of Hopkinton dated July 9, 1991 (regarding waterline)**

Included in the "Hope Valley Water System" as described in the within Agreement are the following parcels of real property listed by reference to their current Assessor's Plat and Lot designations:

Hopkinton Tax Assessor's Map 27

| | | |
|---|---|---|
| Lot 101 | Lot 148 | Lot 163 |
| Lot 102 | Lot 149 | Lot 164 |
| Lot 103 | Lot 150 | Lot 165 |
| Lot 132 and 133 | Lot 151 | Lot 166 |
| Lot 134 | Lot 152 | Lot 167 |
| Lot 136 | Lot 153 | Lot 168 |
| Lot 137 | Lot 154 | Lot 169 |
| Lot 138 | Lot 155 | Lot 170 |
| Lot 139 | Lot 156 | Lot 171 |
| Lot 141 | Lot 157 | Lot 172 |
| Lot 142 | Lot 158 | Lot 173 |
| Lot 143 | Lot 158A | Lot 174 |
| Lot 144 | Lot 159 | Lot 174A |
| Lot 145 | Lot 160 | Lot 175 |
| Lot 146 | Lot 161 | Lot 176A |
| Lot 147 | Lot 162 | |

Hopkinton Tax Assessor's Map 28

| | | |
|---|---|---|
| Lot 16 | Lot 132 | Lot 140 |
| Lot 125 | Lot 133 | Lot 141 |
| Lot 126 | Lot 135 | Lot 142 |
| Lot 127 | Lot 136 | Lot 143 |
| Lot 128 | Lot 137 | Lot 144 |
| Lot 129 | Lot 138 | Lot 145 |
| Lot 130 | Lot 139 | |