***UNITED STATES DISTRICT COURT***
***FOR THE DISTRICT OF RHODE ISLAND***

SOUTH SHORE MENTAL
HEALTH CENTER, INC., et al.

v. Civil Action No. 07-454-ML

THE TOWN OF HOPKINTON; et al.

***PLAINTIFFS' SUPPLEMENTAL MEMORANDUM***
***IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS***

In addition to, and incorporating, the reasons and arguments previously proffered to the Court, plaintiffs rely on *Sullivan, et al. v. Carney, et al.,* No. WC-2005-744 (February 4, 2008) in opposition to the Motion to Dismiss filed by the defendants.

In *Sullivan,* the Rhode Island Superior Court opined on the question of the binding nature of Affordable Housing Plans prepared by the various municipalities in an effort to meeting the obligation to provide a minimum number of affordable housing units to their citizens imposed by Chapter 53 of Title 45 of the Rhode Island General Laws. In *Sullivan,* the Superior Court struck an amendment to the Charlestown Zoning Ordinance that was not in conformity with the Town's Comprehensive Plan and Affordable Housing Plan. *Sullivan v. Carney,* No. WC-2005-744, February 4, 2008, slip op. at 20.[1] "As part of the Comprehensive Plan, the affordable housing plan is not simply an innocuous general policy statement. Rather, the affordable housing plan is just as legally binding as the rest of Charlestown's Comprehensive Plan and may not be discarded or ignored." *Id.* at 16 (internal citation omitted).

In ruling against the Town of Charlestown, the *Sullivan* court ordered that it pay the plaintiffs' attorneys' fees.

[1] A copy of this decision is attached.

The Complaint in this case alleges that the Hopkinton's Affordable Housing Plan *specifically* includes and references the development anticipated by Women's Development Corp. and South Shore Mental Health Center. *Complaint,* ¶ 44. Accepting this fact as true, which the Court does at the Motion to Dismiss stage, *Figueroa v. Rivera,* 147 F.3d 77 (1st Cir. 1998), a fact-finder can certainly determine that the Town's refusal to amend the Water Agreement for the benefit of this affordable housing project is inconsistent with the Town's "legally binding" Affordable Housing Plan. *Sulluvan,* slip op. at 16. As such, there is yet another set of facts on which the Mental Health Center and WDC can prevail on their Complaint.

Wherefore, for these reasons, and for the reasons set forth in their Memorandum in Opposition to Defendants' Motion to Dismiss, the plaintiffs request that the motion be denied.

SOUTH SHORE MENTAL HEALTH
CENTER, INC., et al.
By their attorney,

/s/ Douglas J. Emanuel

Douglas J. Emanuel (5176)
CHACE RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: May 8, 2008

***CERTIFICATE OF SERVICE***

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 8, 2008.

/s/ Douglas J. Emanuel

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**

**WASHINGTON, SC** **Filed Feb 4, 2008** **SUPERIOR COURT**

| | | |
|---|---|---|
| **W. MICHAEL SULLIVAN, HENRY W. OPPENHEIMER, JENNIFER P. ANDERSON, KEVIN R. GOSPER, and JASON J. PROULX, in their official capacities as members of the Town Council of the Town of RICHMOND** | : | |
| **v.** | : | **C.A. No. WC 2005-0744** |
| **DEBORAH A. CARNEY, DONNA WALSH, GREGORY J. AVEDESIAN, FORRESTER C. SAFFORD, and KATHERINE H. WATERMAN, in their official capacities as members of the Town Council of the Town of CHARLESTOWN, JODI P. LaCROIX, in her official capacity as Town Clerk of the Town of Charlestown, JOHN MATUZA, in his official capacity as Building official of the Town of Charlestown, and BURDICK & SONS COMPANIES, L.L.C.** | : | |

## DECISION

**THOMPSON, J.** This matter is before the Court on a motion by the Town Council of Richmond ("Richmond Council" or "Richmond") for summary judgment. The Richmond Council seeks a declaratory judgment invalidating an amendment to Charlestown's Zoning Ordinance (the "Ordinance") that the Town Council of Charlestown ("Charlestown Council") approved on November 14, 2005 (the "amendment"). The Richmond Council has also requested injunctive relief in the form of an Order requiring defendants Jodi LaCroix and John Matuza to depict a certain parcel of property as within Charlestown's R-40 zoning district. The Richmond

Council filed its timely complaint on December 14, 2005. Jurisdiction is pursuant to G.L. 1956 §§ 45-24-71 and 9-30-1.[1]

**Facts and Travel**

Burdick & Sons Companies, LLC ("Burdick") has a legal or equitable interest in real estate located at 1645 Shannock Road, Charlestown, Rhode Island (the "property"), and further designated as Lot 163 on Assessor's Plat 28.[2] The property consists of a 1.6 acre lot and contains a building that had previously been used as a fire station by the Charlestown-Richmond Volunteer Fire Association. The property is located in the Shannock Village Historic District. The abutting properties on either side are zoned R-40 residential. The property across the street is zoned C-1 commercial, although it is currently being used as multi-family residential. The remaining edge of the property is bordered by the Pawcatuck River. The Charlestown-Richmond line is located in the middle of the Pawcatuck River, less than two hundred feet from the property.

Burdick—a contractor whose business involves the installation, repair, and pumping of septic systems—acquired an interest in the property with the intention of using the already existing building as a garage for its vehicles. The town building official informed Burdick that its proposed use would be considered a "contractor's yard" under the Ordinance, and that such a use is only permitted in a C-2 zone.[3] Consequently, Burdick applied to the Charlestown Town

---

[1] Rhode Island General Laws Section 9-30-1, the Uniform Declaratory Judgments Act, provides this Court with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

[2] It appears from the record that Burdick had entered into a Purchase and Sales Agreement conditioned on the property being rezoned from R-40 to C-2. While the identity of the present legal owner is not clear based on the record before this Court, there has been no intimation that Burdick was not a proper party to apply for a zoning change. As such, the exact nature of Burdick's interest in the property is irrelevant to the resolution of the matter currently before this Court.

[3] The Ordinance defines a contractor's yard as "[l]and, buildings, or structures of a general contractor/builder, landscaper, or snow plower where commercial vehicles and/or equipment are parked, dispatched, and/or stored." Ordinance § 218-5.

Council, seeking an amendment to the Ordinance changing the property's zoning designation from R-40 residential to C-2 commercial.[4]

The Charlestown Council held a public hearing to consider Burdick's application on November 14, 2005. Because the property is within two hundred feet of Charlestown's border with Richmond, the Charlestown Council provided the Richmond Council with notice of the hearing in accordance with G.L. 1956 § 45-24-53(d). Although Richmond did not send a representative to object to the proposed amendment in person, Richmond's Town Planner sent the Charlestown Council a letter objecting to the change. The letter stated that the Richmond Council felt the proposed change would constitute spot zoning, as well as contravene Charlestown's existing Ordinance and its Comprehensive Plan. The Richmond Council also objected on the grounds that Shannock Village is not an appropriate location for a septic hauling business because of its residential and historic character. Finally, the Richmond Council opined that locating a business that handles septic system waste directly adjacent to the Pawcatuck River presents a risk of leaks and spills that could contaminate its waters. This letter was introduced as an exhibit at the public hearing.[5]

Several witnesses appeared to testify in support of Burdick's proposed zoning change, including two experts. Mr. Joseph Lombardo provided expert testimony that rezoning the property from R-40 to C-2 would be consistent with the Ordinance and with Charlestown's Comprehensive Plan. Mr. Lombardo also submitted a planning report detailing the methods he used to arrive at his conclusions. Additionally, Mr. Lombardo stated that although the property

---

[4] Neither the date of this application nor the date of Burdick's acquisition of an interest in the property appear in the record. However, such dates are immaterial for the purposes of this Decision.

[5] In addition to the letter from Richmond's Town Planner, the Charlestown Town Council received one letter in favor of the proposed zoning change as well as two other letters of objection.

across the street is zoned C-1 commercial, its current use encompasses a church and several residences.

Mr. Michael Lenihan also provided testimony before the Charlestown Council. Mr. Lenihan testified as an expert in the field of real estate appraisal and stated that he was familiar with both the Ordinance and Charlestown's Comprehensive Plan. Mr. Lenihan believed that the proposed use would represent an asset to the community because the building that had been used as a fire station was about to be vacated, leaving an "unknown sitting in the middle of a residential zone." See Hearing Transcript ("Tr."), 11/14/2005 at 22. He concluded that using the existing building as a contractor's yard provides a benefit because the existing building "is not going to go away" and "[a]t least what's proposed before [the Charlestown Council] tonight, it's a known."

Although several other witnesses appeared before the Charlestown Council to express their concerns about the proposed use, none of these witnesses were qualified as an expert. A copy of Charlestown's Comprehensive Plan was not introduced at the hearing. The Charlestown Council also considered a letter from the Charlestown Planning Commission evincing the Planning Commission's three-to-two vote to deny recommending that the amendment be adopted.[6]

The Planning Commission reported that the two members in favor of the proposed amendment felt that the proposed use of the property would not be any more intrusive—and probably less intrusive—than the existing fire station use. One of the members favoring the amendment also questioned whether anything else could be done with the existing building on

---

[6] State law required the Planning Commission to provide the Charlestown Council with its opinion on the adoption of the amendment. See §§ 45-24-51 (requiring a town's planning board to report its findings and recommendations as to a proposed amendment to a zoning ordinance to the town council) and 45-24-52 (requiring a planning board to consider whether a proposed amendment to a zoning ordinance is consistent with the town's comprehensive plan).

the property if the amendment was not approved. The three members opposed to adopting the amendment generally felt that it would be inappropriate to allow a contractor's yard on a lot that had originally been zoned R-40 residential. One member concluded that adoption of the amendment would constitute spot zoning, while another felt that the amendment was inconsistent with the Comprehensive Plan's housing element. Mr. Rohm, the Planning Commission's Chairman, appeared before the Charlestown Council and reiterated the Commission's concerns regarding the proposed rezoning. See Tr. at 33-38.

After closing the public hearing, the Charlestown Council discussed the testimony it had just heard and considered imposing certain conditions on any zoning change in order to alleviate some of the concerns raised by the objecting property owners. The Charlestown Council ultimately voted to approve the zoning change with four votes in favor and one vote against. However, the Charlestown Council attached the following conditions to its approval of the amendment:

> (1) Hours of operation shall be Monday, 8:00 a.m. to 5:00 p.m. and Saturday 8:00 a.m. to 12:00 p.m.
> (2) All vehicles and equipment of the business shall be kept inside the building.
> (3) If the building is sold to an unrelated third party for a change of use from a contractor's yard, the C2 zoning designation shall cease to exist and shall be revert [sic] back to an R40 zoning designation.
> (4) The site shall be used as a contractor's yard only, in accordance with the evidence entered into the record of the hearing, and for no other use allowable under the C2 zoning designation.

Believing this amendment to be inconsistent with Charlestown's Comprehensive Plan, Richmond filed a timely complaint with this Court on December 14, 2005. Richmond has asked this Court to invalidate the amendment pursuant to G.L. 1956 § 45-24-71 as inconsistent with the

Comprehensive Plan, as well as issue a declaratory judgment to the same effect.[7] Richmond also seeks an injunction requiring Charlestown to depict the property as within the R-40 zoning district on its zoning maps. Finally, Richmond has requested an award of attorney's fees. Defendant Burdick has objected to Richmond's motion for summary judgment.[8]

## Standard of Review

A party is entitled to summary judgment when an examination of the "pleadings, affidavits, admissions, answers to interrogatories" and other materials, viewed in a light most favorable to the non-moving party, reveals no "genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001). In conducting this examination, the motion justice must draw all reasonable inferences in favor of the non-moving party. Id. "If there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross & Blue Shield, 604 A.2d 1260, 1261 (R.I. 1992).

An examination of the papers submitted to this Court shows that the material facts of the instant case are not in dispute.[9] As such, the issues presently before this Court are appropriately resolved as a matter of law.

## Analysis

Richmond first argues that this Court should review the approved amendment de novo in order to determine whether its provisions are in strict compliance with Charlestown's Comprehensive Plan. According to Richmond, application of a de novo standard will allow this

[7] Section 45-24-71 allows this Court to invalidate an amendment to a zoning ordinance that is inconsistent with a town's comprehensive plan.

[8] Charlestown has not objected to Richmond's motion for summary judgment, nor has it joined in Burdick's objection.

[9] Burdick has argued that it is entitled to an evidentiary hearing on the question of whether or not the amendment is consistent with the comprehensive plan. By raising this argument, Charlestown assumes that the issue of consistency with the comprehensive plan is ultimately a question of fact. However, this Court finds that the heart of the controversy involves a dispute over the interpretation of Charlestown's comprehensive plan. Such a dispute clearly presents a question of law. Rossi v. Employees' Retirement System, 895 A.2d 106, 110 (R.I. 2006).

Court to consider the entirety of Charlestown's Comprehensive Plan, despite the fact that it was not introduced into evidence at the public hearing on November 14, 2005. Richmond then urges this Court to find that the amendment is inconsistent with specific provisions of the Comprehensive Plan, namely its Future Land Use Map and the housing element.[10]

In rejoinder, Burdick argues that Richmond does not have standing to bring the instant action and states that Richmond's appeal is actually an attempt to "usurp" Charlestown's statutory rights to implement its own zoning ordinances. See Memorandum of Law of the Defendant, Burdick & Sons Companies, L.L.C., Contra the Plaintiffs' Motion for Summary Judgment at 7 ("Burdick Memo"). Burdick also argues that Richmond's claim must fail because the Charlestown Council has been given express authority "to adopt, amend or repeal, and to provide for the administration, interpretation, and enforcement of, a zoning ordinance." § 45-24-50(a). According to Burdick, the enactment of the amendment constitutes an interpretation of the Ordinance that is well within the Charlestown Council's authority and should not be overturned by this Court.

**Standing**

Burdick has asserted that Richmond "can point to neither statutory nor decisional authority granting it standing to subvert Charlestown's statutory determination of the implementation and amendment to its own plan." Burdick Memo at 7. This argument is grounded on Burdick's belief that "[t]he gravamen of [Richmond's] contention is that, as a matter of law, is [sic] that insofar as the Charlestown Town Council did not seek an amendment to its comprehensive plan, that the relief granted below must be vacated." Id. at 4. According to Burdick, Richmond's "complaint is grounded not on the action taken but the purported inaction

[10] Richmond's complaint also alleges that the condition on the zoning change providing for an automatic reversion of the property to an R-40 zone is invalid as it violates the notice requirements contained within § 45-24-53. Given this Court's disposition of the other issues in this case, it is unnecessary to give this argument further consideration.

of the Town of Charlestown in failing to adopt amendment's [sic] to its comprehensive plan." Id.

This Court finds that Burdick is laboring under a serious misapprehension of the facts of the case, the depth of which is made obvious by referral to the face of Richmond's complaint. Richmond's complaint is directed entirely to the enactment of the amendment to the ordinance on November 14, 2005.[11] In all of its arguments to this Court, Richmond has always contended that the amendment is invalid because it is inconsistent with the provisions of the Comprehensive Plan that were in effect as of November 14, 2005. Richmond has not, at any point, asked this Court to require the Charlestown Council to amend its Comprehensive Plan. Thus, this Court finds that Burdick's argument that Richmond is challenging the Charlestown Council's failure to amend its Comprehensive Plan is wholly devoid of factual support.

Moreover, an examination of the record and relevant statutory provisions reveals, beyond doubt, that Richmond possesses the requisite standing to maintain this action. Appeals of amendments to zoning ordinances are governed by § 45-24-71. That section states that

> [a]n appeal of an enactment of or an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective. The appeal may be taken by an aggrieved party... § 45-24-71(a) (emphasis added).

Thus, the question of standing turns on whether or not Richmond constitutes an aggrieved party that is entitled to appeal the Charlestown Council's enactment of the Ordinance amendment.

General Laws Section 45-24-31(4) defines an aggrieved party as

---

[11] Count One of the complaint specifically prays for a judgment declaring that "[t]he November 14, 2005, Zoning Ordinance amendment enacted by [the Charlestown Council] is not in conformance with the Charlestown Comprehensive Plan." In Count Two, Richmond asks this Court to grant injunctive relief and request this Court to "[i]nvalidate the Zoning Ordinance amendment enacted on November 14, 2005," and [o]rder defendants LaCroix and Matuza to depict Lot 163 on Assessor's Plat 28 as within the R-40 zoning district."

> (i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or
> (ii) Anyone requiring notice pursuant to this chapter.

Here, Richmond alleges that it is an aggrieved party because it was entitled to receive notice of the proposed amendment to the Ordinance.

Although Burdick admits that Richmond was indeed entitled to notice of the proposed amendment, the Court notes that § 45-24-53(a) provides that "[n]o zoning ordinance shall be adopted, repealed, or amended until after a public hearing has been held upon the question before the city or town council." The statute further provides that notice of such hearing must be sent to the town council of any town that "is located in or within not less than two hundred feet (200') of the boundary of the area proposed for change." § 45-24-53(d). It is undisputed that the Charlestown-Richmond line is located within two hundred feet of the property. As such, the Richmond Council was entitled to notice of the public hearing to consider the amendment. It follows that, as a party entitled to notice, the Richmond Council qualifies as an aggrieved party in accordance with § 45-24-31(4)(ii). This Court therefore finds that the Richmond Council has standing to bring and maintain the instant action pursuant to § 45-24-71.

**Deference to the Charlestown Council**

Given that this Court has found that Richmond is a proper party to maintain the suit at bar, the Court is free to consider the merits of the case. As noted above, Richmond argues that the amendment is inconsistent with Charlestown's Comprehensive Plan and should therefore be invalidated. Richmond further argues that this Court should review the consistency issue de

novo.[12] Burdick responds by contending that the enactment of the amendment is a legislative act that constitutes Charlestown's own interpretation of its Ordinance and Comprehensive Plan. According to Burdick, this Court should defer to Charlestown's understanding of the requirements contained within its own legislative enactments. Thus, before deciding the ultimate issue of the case, this Court must first determine what level of deference, if any, is due to Charlestown's enactment of the amendment.

This Court's review of the propriety of the amendment is governed by the provisions of § 45-24-71. The statute provides, in pertinent part, that

> the review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision. § 45-24-71(c).

Richmond correctly points out that our Supreme Court has not yet decided a case construing the exact nature of this Court's review of an amendment to a zoning ordinance. Fortunately, the Court is not wholly without guidance in resolving this matter.

When interpreting a statute, the reviewing court must "first attempt to see whether or not the statute in question has a plain meaning and is therefore unambiguous." Chambers v. Ormiston, 935 A.2d 956, 960 (R.I. 2007). If a statute is not ambiguous the court is to "simply apply that plain meaning to the case at hand." Id. Otherwise stated, "when the language of a statute is clear and unambiguous, [the reviewing court] must interpret the statute literally and

[12] The Court notes that Richmond has cited this Court to several foreign cases as persuasive authority in determining the applicable standard of review of the enactment of the amendment. Because this Court finds that the issue is adequately addressed by reference to Rhode Island law only, any further discussion of those cases is unnecessary.

evidence on questions of fact." § 45-24-69(d). The statute then sets forth six specific grounds on which the reviewing court may reverse or modify the zoning board's decision.[14] Clearly then, a reviewing court is bound to afford deference to a zoning board of review's factual determinations when considering an appeal pursuant to § 45-24-69.

A reading of § 45-24-71—the statute governing this Court's review in the instant case—reveals that similar provisions establishing a deferential standard of review of enactments of zoning amendments are conspicuously absent. The statute does not expressly forbid this Court from substituting its judgment for that of a town council. Neither does it further restrict the Court's authority to overturn the amendment's enactment to a limited number of grounds, as is the case with an appeal under § 45-24-69. Rather, § 45-24-71 simply provides that this Court "shall invalidate" an amendment that is not in "conformance" with a town's comprehensive plan.

Had the Legislature intended for this Court to defer to the town council's amendment of its zoning ordinance, it would have so indicated in the plain language of § 45-24-71. See P.J.C. Realty v. Barry, 811 A.2d 1202, 1206 (R.I. 2002) ("[t]he Legislature is presumed to be aware of the state of existing relevant law when it enacts or amends a statute"). Failing that, this Court

---

[14] A zoning board's decision may be reversed or modified only if the reviewing court finds that "substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

> (1) In violation of constitutional, statutory, or ordinance provisions;
> (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.

must give the words of the statute their plain and ordinary meanings." State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) (quoting Accent Stone Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). Thus, it is well-settled in Rhode Island that when a court examines an unambiguous statute, there is "no room for statutory construction and [the court] must apply the statute as written." Id. (quoting State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998) (further citations omitted)).

The relevant language of § 45-24-71 states that "[i]f the enactment or amendment is not in conformance with the comprehensive plan . . . the court shall invalidate the enactment or the amendment . . ." § 45-24-71(c). The statute is mandatory in nature, leaving little to this Court's discretion. By its plain terms, this Court is directed to compare the challenged amendment with the town's comprehensive plan, and hold such amendment to be null and void if it does not conform to the comprehensive plan. This Court finds that the statute is clear and unambiguous. As such, it is unnecessary to engage in statutory construction and this Court shall simply apply the statute as written.[13]

Moreover, the plain language of § 45-24-71 does not require this Court to afford any deference whatsoever to a town council's decision to enact an amendment to a zoning ordinance. This Court finds it significant that the statute governing appeals of decisions of zoning boards of review does require the reviewing court to pay the administrative agency a certain amount of deference. See § 45-24-69. Specifically, when reviewing a decision of a zoning board of appeal, the court "shall not substitute its judgment for that of the zoning board as to the weight of the

[13] The Court notes that the plain language of the statute requires the Court to "consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan." § 45-24-71(c). It is apparent to this Court that such a comparison requires an examination of Charlestown's entire Comprehensive Plan, even though the Plan was not introduced at the public hearing on November 14, 2005. A contrary holding would lead to the absurd result of rendering it impossible for this Court to discharge its statutory duty, thereby frustrating Richmond's statutory right to seek judicial review of the amendment to the Ordinance. See Jeff Anthony Properties v. Zoning Board of Review of the Town of North Providence, 853 A.2d 1226, 1230 (R.I. 2004) (wherein the Supreme Court reaffirmed that it will not construe a statute in such a way as to create an absurd result).

finds that it is not required to afford deference to the determinations implicit in Charlestown's enactment of the amendment. As such, this Court shall review the consistency issue de novo.[15]

## Consistency with the Comprehensive Plan

Charlestown, along with every other city and town in the state of Rhode Island, must establish and adopt a comprehensive plan in accordance with the Rhode Island Comprehensive Planning and Land Use Regulation Act, G.L. 1956 § 45-22.2-1 et seq. § 45-22.2-2(b) ("[a]ll cities and towns which have not adopted a comprehensive plan shall do so"). The Act defines a comprehensive plan as "a statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality." § 45-22.2-6. The comprehensive plan must also contain certain "elements," including a "goals and policies statement," a "land use plan element," and a "housing element." Id.[16] Additionally, each municipality must "[c]onform its zoning ordinance and map with its comprehensive plan." § 45-22.2-5(3).

In interpreting the Comprehensive Planning and Land Use Regulation Act, our Supreme Court has held that a town's comprehensive plan is not a mere long-term statement of a town's planning goals, nor is it an "innocuous general-policy statement." Town of East Greenwich v. Narragansett Electric Company, 651 A.2d 725, 727 (R.I. 1994). Rather, the comprehensive plan "establishes a binding framework or blueprint that dictates town and city promulgation of conforming zoning and planning ordinances." Id. A town is "legally compelled to enact or to amend its zoning ordinance in conformity" with its comprehensive plan. Id. When considering

---

[15] See also Bliss v. City of Woonsocket, C.A. No. PC 2004-2357, 2005 R.I. Super. LEXIS 57 at *11 (R.I. Super. Apr. 22, 2005) (wherein a Justice of the Superior Court found that the provisions of § 45-24-71 are unambiguous and call for a de novo review).

[16] Other required elements are an "economic development element," a "natural and cultural resources element," a "services and facilities element," an "open space and recreation element," a "circulation element," and an "implementation program." Id.

a challenged amendment to a zoning ordinance, this Court must examine that amendment and compare it to the comprehensive plan to determine whether the amendment "conforms to the provisions, goals, and policies of the comprehensive plan." Bliss v. City of Woonsocket, C.A. No. PC 2004-2357, 2005 R.I. Super. LEXIS 57 at *11 (R.I. Super. Apr. 22, 2005).[17] This Court considers an amendment's compatibility—or lack thereof—with various elements of the comprehensive plan to be highly relevant to the inquiry.

Turning to the substantive issues, Richmond contends that the amendment rezoning the property from R-40 residential to C-2 commercial is inconsistent with the Comprehensive Plan's inclusion of the property in a medium density residential area on its Proposed Future Land Use Plan Map.[18] An R-40 district is "intended primarily for areas of existing, high density single family residential development distributed through the Town and existing village areas." Ordinance § 218-6(F)(1)(b). The R-40 districts are "further intended to implement the 'medium density residential' proposed future land use category of the Town of Charlestown Comprehensive Plan." Id. A C-2 district, meanwhile, "is intended to concentrate larger retail and service businesses . . . and prevent an unsafe mixture of commercial uses and eliminate potential impacts on residential uses." Ordinance § 218-6(F)(2)(b). This designation "is further intended to implement the 'Commercial 2' proposed future land use category of the Town of Charlestown Comprehensive Plan." Id.

An examination of the Proposed Future Land Use Plan Map reveals that the property is depicted as part of the "medium density residential" area, which the map further identifies as an R-40 zone. Far from indicating that the property has been identified as an appropriate site for

---

[17] This Court is cognizant that the rulings of other Justices of the Superior Court do not serve as binding precedent upon this Court. However, this Court has examined the decision of the trial justice in Bliss and finds it to be thorough and well-reasoned. As such, the Court regards the decision in Bliss as persuasive authority that buttresses this Court's own independent conclusion as to the nature of its review in this case.

[18] This map is incorporated into the Comprehensive Plan's land use plan element required under § 45-22.2-6(2).

future commercial use, the map actually shows that the property's zoning designation is intended to remain as R-40. Thus, this Court finds that the amendment changing the property's zoning from R-40 residential to C-2 commercial is inconsistent with the Proposed Future Land Use Plan Map incorporated in the Comprehensive Plan's land use element.

Although not argued by Richmond, perusal of the Comprehensive Plan shows that the amendment is also inconsistent with the text of the Comprehensive Plan's land use element. Specifically, one of the goals of the land use element is to eliminate certain "'spot' zones, which may allow redevelopment that is inconsistent with surrounding land uses and natural resources." See Town of Charlestown Comprehensive Plan 1991, Land Use at 30. One of these so-called "spot" zones targeted for rezoning is the "[c]ommercial zone on Shannock Road." Id. at 31.[19] This goal comports with the depiction of the property as medium density residential on the Comprehensive Plan's Proposed Future Land Use Map.

It is clear that the overall goal of the Comprehensive Plan with regards to the Shannock Village area is to maintain its current residential character by eliminating the inconsistent commercial zoning within the village. Rezoning property within the village from residential to commercial—as the challenged amendment does—not only fails to advance this goal, it actively frustrates the avowed policies found within Charlestown's binding Comprehensive Plan. This Court therefore finds that the amendment is not in conformance with either the text or the maps that comprise the Comprehensive Plan's land use element.

In addition to being inconsistent with the Comprehensive Plan's land use element, Richmond also argues that the amendment does not conform to the Plan's housing element. A comprehensive plan's housing element must "enumerate[] local policies and implementation

[19] This is apparently a reference to the designation of several lots across the street from the subject property as a C-1 commercial zone.

techniques to . . . achieve[] a balance of housing choices, recognizing local, regional, and statewide needs for all income levels and for all age groups, including, but not limited to, the affordability of housing." § 45-22.2-6(3). To this end, the housing element is required to include an "affordable housing plan that identifies housing needs in the community, including, but not limited to, the needs for low and moderate income housing, [and] establishes goals to meet those needs." Id. The affordable housing plan itself is required to include an "implementation program of actions to be taken to effectuate the policies and goals of the affordable housing plan." Id. The ultimate goal of the mandatory affordable housing plan is to ensure that a town provides low and moderate housing that "is in excess of ten percent (10%) of the year-round housing units reported in the census." § 45-53-3(2).

Charlestown approved its affordable housing plan on October 14, 2004. The affordable housing plan acts as an amendment to the housing element of Charlestown's Comprehensive Plan, thereby becoming a part of the overall Comprehensive Plan itself. As part of the Comprehensive Plan, the affordable housing plan is not simply an "innocuous general-policy statement." See Narragansett Electric Company, 651 A.2d at 727. Rather, the affordable housing plan is just as legally binding as the rest of Charlestown's Comprehensive Plan and may not be discarded or ignored. Id.

Charlestown's affordable housing plan states that only forty-seven out of 3,318 year-round housing units, or 1.42%, meet the statutory definition of affordable housing, compared to its goal of having 10% of housing units qualify as affordable housing. See Appendix to Memorandum of Law in Support of Richmond's Motion for Summary Judgment ex. 7 ("Affordable Housing Plan") at 3. Charlestown has recognized that it faces "a major challenge . . . to meet or exceed the state-mandated requirement that a reasonable percentage of the housing

units be affordable to low and moderate income households." Id. Despite the present lack of affordable housing in Charlestown, the affordable housing plan suggests that "with significant political will and proactive measures," Charlestown could attain its goal of 10% affordable housing within twenty years. Id. at 56.

One aspect of the affordable housing plan involves encouraging the creation of additional low and moderate income housing through the establishment of an affordable housing overlay district or amended mixed-use zoning. Id. at 40. This strategy is "intended to promote mixed use, mixed development on a larger scale and in ways specifically targeted by the Town," and anticipates the redevelopment of certain properties. Id. at 41. The property at issue here is one such lot explicitly contemplated as a site for redevelopment: "[t]he Shannock Historic Village District, specifically (AP 28 Lot 163), as identified on Map 1 of Appendix L, has also been identified by the Task Force as a potential key development for LMI [low and moderate income] housing within that district." Id. at 42 (emphasis added). Recall that the property is designated as Lot 163 on Assessor's Plat 28, and, as such, is specifically mentioned within the affordable housing plan.

Rezoning the property from R-40 residential to C-2 commercial in order to facilitate its use as a contractor's yard is clearly inconsistent with the text comprising the affordable housing plan. Moreover, an examination of the transcript of the public hearing before the Charlestown Council shows that the possibility of using the property for affordable housing was only briefly discussed. Councilor Safford opined that "you could probably never see" affordable housing on the property due to the high cost of construction as well as the necessity for complying with numerous regulations. Tr. at 35-36. Chairperson Carney did not believe it was appropriate for the Charlestown Council to consider using the property for affordable housing as she stated that

"I just don't see where the Town has that right to say we're going to put affordable housing on your property." Id. at 41. She also pointed out that Charlestown is not the owner of the property. Id. Finally, Mr. Tom Sperling appeared and testified that it would be "impossible" to construct affordable housing on the property because the Coastal Resources Management Council would not approve the installation of a septic system given the property's proximity to the Pawcatuck River.[20] Id. at 42-43.

Councilor Safford's concerns that it would be cost-prohibitive to redevelop the property as affordable housing can best be described as sheer speculation. The same can be said about Mr. Sperling's testimony, especially considering that he failed to mention—or else was unaware of—the possibility of obtaining variances from the Coastal Resources Management Council's regulations regarding septic systems. Moreover, Mr. Sperling was not recognized as an expert, nor does the record provide any additional background to allow this Court to conclude that he possessed any expertise whatsoever on the installation of septic systems or on the proper interpretation of regulations promulgated by a state agency. As such, this Court finds that the highly speculative testimony of these two witnesses does not provide any support whatsoever for the Charlestown Council's disregard of the Comprehensive Plan's housing element.

After examining the record of the public hearing before the Charlestown Council, this Court is compelled to conclude that the possibility of using the property for affordable housing was given only superficial consideration. The fact that the property is explicitly designated as a potential key location for affordable housing was not even mentioned. The Charlestown Council

[20] The Court notes that the record fails to disclose any other information about Mr. Sperling. Mr. Sperling did not identify himself as a property owner entitled to notice of the public hearing, nor did he provide the Charlestown Council with information as to his professional background. Simply put, the record identifies Mr. Sperling by name only, and this Court is at a loss to determine his qualifications for providing an opinion as to a possible future decision of the Coastal Resources Management Council.

essentially ignored its long-term goal—mandated by state law—of ensuring that 10% of its year-round housing units qualify as affordable housing.

While this Court does not now hold that the property must be used for affordable housing simply because the site is designated as a potential site for redevelopment, the Court is concerned that the Charlestown Council simply disregarded the clear language of the affordable housing plan. The instant case is not one in which variances and approvals that would be necessary for constructing affordable housing had previously been denied, thereby providing the Charlestown Council with a factual basis for believing that it would be impossible to locate affordable housing on the site. Rather, the discussion regarding affordable housing was based on pure speculation that it might be too expensive to build affordable housing on the property, or that a required variance may not be granted.

Given the foregoing, this Court finds that the Charlestown Council had no basis for disregarding the plain language of the affordable housing plan and enacting an amendment that is quite clearly inconsistent with that plan. As such, this Court finds that the amendment is contrary to the policies, goals, and specific language contained within the Comprehensive Plan's housing element.

## Attorney's Fees

Finally, Richmond has also requested this Court to award it a reasonable attorney's fee against Charlestown. Rhode Island General Laws Section 45-24-71 authorizes this Court to make such an award to a party appealing the enactment or amendment of a zoning ordinance. Specifically, this Court "may, in its discretion, upon the motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, including a municipality." § 45-24-71(f).

In light of the Court's disposition of this mater, this Court shall grant Richmond's request for attorney's fees. Although the statutory structure contemplates such an award as purely in the reviewing court's discretion, this Court does not make such an award lightly. Rather, this Court chooses to exercise its discretion to award attorney's fees on the basis of the Charlestown Council's failure to engage in any meaningful consideration whatsoever of the requirements, policies, and goals of its own Comprehensive Plan.

**Conclusion**

After comparing the amendment with the specific provisions, goals, and elements of Charlestown's Comprehensive Plan, this Court finds that the amendment is inconsistent with the overall goals and policies of the Comprehensive Plan's land use and housing elements. Moreover, the amendment is in direct contravention of language in the Comprehensive Plan indicating that commercial zoning in the Shannock Village should be eliminated, and that the property should be considered for redevelopment as affordable housing. The amendment is also contrary to the inclusion of the property in the medium density residential zone of the Proposed Future Land Use Plan Map. Therefore, this Court finds that the amendment is not in conformance with the Comprehensive Plan within the meaning of G.L. 1956 § 45-24-71. As such, the amendment is invalid.

Richmond's motion for summary judgment is granted. Pursuant to G.L. 1956 § 9-30-1, this Court finds and declares that the amendment to the Ordinance enacted on November 14, 2005, is not in conformance with Charlestown's Comprehensive Plan. Given that the amendment is invalid, this Court shall issue an injunction requiring defendants LaCroix and Matuza to perform the ministerial task of depicting Lot 163 on Assessor's Plat 28 as within the

R-40 zoning district, thereby restoring the property to the zoning designation it had previously held prior to the enactment of the amendment on November 14, 2005.

Richmond's request for attorney's fees under G.L. 1956 § 45-24-71(f) is granted conditioned on the submittal of appropriate attorney's fees affidavits stating the amount requested and properly documenting that amount's reasonableness. Charlestown must file any response to Richmond's fee and expense request within ten (10) days of the filing of such request. All parties must engage in a good faith effort to reach agreement on any remaining fee and expense issues before requesting any further hearing by this Court.

Counsel shall submit an appropriate order for entry in accordance with this Decision on or before Wednesday, February 20, 2008.