# AGREEMENT

THIS AGREEMENT, made and entered into this 9th day of July, 1991 by and between the Town of Richmond, Rhode Island, a municipal corporation (hereinafter referred to as "Richmond") and the Town of Hopkinton, Rhode Island, a municipal corporation (hereinafter referred to as "Customer").

W I T N E S S E T H:

WHEREAS, Customer desires to purchase potable water from Richmond for its Hope Valley Water System for a period of years; and

WHEREAS, Richmond desires to furnish such potable water to Customer under certain terms and conditions; and

WHEREAS, both Customer and Richmond want the terms and conditions under which Richmond will furnish potable water to the Customer to be set forth herein.

NOW, THEREFORE, in consideration of the promises and of the covenants and agreements hereinafter set forth, and for other good and valuable consideration, receipt whereof is hereby mutually acknowledged, and intending to be legally bound, the parties hereto covenant and agree as follows:

1. Richmond agrees to furnish and deliver potable water to Customer, at a meter location on Route 138 at the Richmond/Hopkinton Town line. The water so provided shall service a maximum of 65 users through a 3/4" meter within the Wastewater Management District designated by Customer as comprising the Hope Valley System and listed by plot and lot number in Exhibit A, attached hereto and incorporated herein and the Hope Valley School.

2. All valves, connections, meters and appurtenances necessary to make and maintain the connection between Richmond and the Customer will be furnished, installed, and maintained at Customer's sole cost and expense, to specifications prepared and provided, or approved in advance, by Richmond.

3. Any replacements, together with construction costs of the necessary meter, meter pit and appurtenances, which may be required from time to time shall be the sole responsibility of, and at the sole cost and expense of, the Customer. Customer grants to Richmond the right to inspect the aforesaid meter, meter pit and connections at all times, and, if necessary, to replace or repair them and any expenditures incurred by Richmond shall be promptly reimbursed by Customer upon presentation of invoices. Customer agrees to maintain the facilities at the connection, as well as its own transmission lines, in good, serviceable condition. The distributions system of the Customer shall be approved by Richmond to insure compatibility and overall integrity of the system. Richmond reserves the right to reject any equipment, pipe, valves, or appurtenances within the Customer's delivery system as it deems necessary to insure the integrity of the complete water system.

4. Richmond and Customer understand and agree that in order for Richmond to supply Customer with water without risk to quality and supply, it is necessary that Richmond install a "back-up" or auxiliary well, in addition to its current well. Customer, therefore, agrees to contribute to the cost of said

well. The amount of said contribution to be determined as follows:

a) Customer to determine the cost of the meter and its installation on the Town line as aforesaid;

b) Richmond to determine the cost of the "back-up" well installation;

c) The sum of (a) and (b) above to be calculated and multiplied by .55;

d) The cost identified in (a) to be subtracted from the product in (c) and that sum being the price paid Richmond.

5. Customer will pay for all metered water according to the following schedule:

a) an annual service fee of $7,000.00 shall be charged annually for the first five (5) years of this agreement, except as otherwise provided herein. Such fee shall be full payment for the meter fee and the base water allocation. Whatever payment is made by Customer toward the "back-up" well installation as provided for in Paragraph 4, above, shall be credited annually toward said annual service fee at the rate of $7,000 per year until the amount so paid is totally credited. (i.e. if the payment made is $49,000, then in that event, the annual fee shall be deemed paid for a period of seven years)

After the conclusion of the first five (5) years of this agreement or the total application of the above described credit, whatever occurs later, the annual fee shall be a rate proportional to that of the base service fee charged by Richmond to its residential customers serviced with a 3/4" meter. Customer's annual service fee shall be calculated as the product determined by multiplying the annual Richmond residential service fee (3/4" meter service) by 0.34 and multiplying the product by 257. The fee shall be determined by Richmond. The initial service fee shall be due in full within seven (7) days of Customer initially activating its water system and each year thereafter on the anniversary of this agreement.

The base water allocation shall be determined by the number of customer meters installed by the Customer multiplied by 30,000 gallons. The base allocation shall be determined by written documentation of the number and location of meters installed by the Customer on a quarterly

basis. The Customer base allocation shall be based on the most recent quarterly meter report.

b) The rate structure for usage over the base allocation shall be .003 cents per gallon.

c) In addition to the payments provided for in Paragraphs (a) and (b) next preceding, Customer shall pay to Richmond a proportional share of any and all capital expenditures and/or maintenance costs expended or incurred by Richmond in the operation of its water system in conjunction with service to the Town of Hopkinton (except for the "back-up" well which is separately addressed above). Except in an emergency, Richmond shall notify Customer 30 days in advance of its intention to make such capital expenditures and/or incur such maintenance expenses, but the decision to make such capital expenditures or incur such maintenance costs shall be solely Richmond's. Payment shall be due from Customer within 90 days of billing by Richmond.

Proportional share, for the purpose of computing charges allocable to Customer, shall mean a percentage computed by dividing the total number of gallons pumped by Richmond in the twelve months just passed by the total number of gallons metered to the Customer in the twelve months just passed. Said percentage shall then be multiplied against the dollar amount of capital expenditures and/or maintenance expenses. In the event such expenditures are made within the first twelve months of the life of this agreement, then reasonable usage projections shall be made by Richmond in determining the charges allocable to Customer.

6. Any water distribution installation, the water use of which is intended for purposes other than domestic consumption, shall first require approval in writing from the Town of Richmond, which approval the Town of Richmond shall not unreasonably withhold. The Town of Richmond approves installation to the properties listed in Exhibit A, provided 3/4" meter is used and also approves installation to the Hope Valley School, provided hosever, that metering and service to Hope Valley School shall not be used in the determination of the base allocation.

Distribution installations for the purpose of providing fire protection shall be subject to the initial meter charges and annual maintenance fees determined from time to time by the Richmond Water Board at the same rates as they apply in Richmond provided, however, in no case shall such installations be used in the determination of the base allocation.

7. Richmond will render bills for the usage fees quarterly in arrears and such bills are due and payable when rendered. The quantity of water sold to Customer shall be ascertained by a meter reading made on a quarterly basis. Bills remaining unpaid for longer than thirty (30) days from billing date shall accrue interest at the rate of ninety (90%) percent of the average prime interest rate posted at The washington Trust Company over the preceding thirty (30) days.

8. Customer agrees to make all records relative to the Hope Valley System available to Richmond at all reasonable times during regular business hours upon ten (10) days written notice in advance of such inspection.

9. Customer agrees that the Hope Valley System shall not be expanded beyond the users specified in Exhibit A and Hope Valley School without the prior written consent of Richmond.

10. Customer agrees that it will make no claims against Richmond for damages due either to the pressure or quantity of water furnished hereunder in the event that Richmond should be prevented from furnishing the same for any reason whatsoever. In the event of fire in the area served by Customer, the Customer is

to receive such supply of water as shall then be available, and no more. Customer acknowledges and agrees that Richmond is not, in any manner, an insurer of property or persons; and has not undertaken to extinguish fires or to protect any persons or property against loss or damage by fire or otherwise; and, that it shall be free and exempt from any and all claims by Customer or any third party or property owner for damages on account of any injury to property or persons by reason of fire, water, or failure to supply water or pressure in case of fire or other catastrophe.

11. Customer and Richmond agree this contract shall remain in full force and effect for fifteen (15) years from the date hereof, and shall continue in effect thereafter until notice of cancellation is furnished in writing by either party to the other which shall specify a cancellation date no earlier than two (2) years from the date of said notice of cancellation.

12. Performance hereunder by the parties hereto is subject to and expressly conditioned upon approval of the Water Resources Board of the State of Rhode Island; any and all other permits that either party may need to receive from the State of Rhode Island for the purposes contemplated herein; and the obtaining of grants by the Town of Hopkinton in such amounts as will require it to expend from bond sources no more than $100,000.00 for the water extension, including the main transmission line, laterals, meter and meter pit and contributions to the "back-up" well as contemplated herein.

13. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto by notification to the other party that such an assignment is to be made.

14. No modifications, amendments or supplements to this agreement shall be effective for any purpose unless in writing signed by each party. Whenever any approval or consent of a party hereto must be obtained, pursuant to any provision of this agreement, such approval or consent shall not be unreasonably withheld or delayed. Failure by Customer to adhere to any part of this agreement shall result in Richmond having the right to terminate the agreement with 180 days notice.

ATTEST: Town of Richmond

Jennifer F. Aldrich, CMC, Town Clerk

By: Eleanor Davis
Its: Town Council President

ATTEST: Town of Hopkinton

By:
Its: TOWN COUNCIL PRESIDENT

SEP 1 7 1993

**EXHIBIT A to Agreement by and between the Town of Richmond and the Town of Hopkinton dated July 9, 1991 (regarding waterline)**

Included in the "Hope Valley Water System" as described in the within Agreement are the following parcels of real property listed by reference to their current Assessor's Plat and Lot designations:

Hopkinton Tax Assessor's Map 27

Lot 101
Lot 102
Lot 103
Lot 132 and 133
Lot 134
Lot 136
Lot 137
Lot 138
Lot 139
Lot 141
Lot 142
Lot 143
Lot 144
Lot 145
Lot 146
Lot 147
Lot 148
Lot 149
Lot 150
Lot 151
Lot 152
Lot 153
Lot 154
Lot 155
Lot 156
Lot 157
Lot 158
Lot 158A
Lot 159
Lot 160
Lot 161
Lot 162
Lot 163
Lot 164
Lot 165
Lot 166
Lot 167
Lot 168
Lot 169
Lot 170
Lot 171
Lot 172
Lot 173
Lot 174
Lot 174A
Lot 175
Lot 176A

Hopkinton Tax Assessor's Map 28

Lot 16
Lot 125
Lot 126
Lot 127
Lot 128
Lot 129
Lot 130
Lot 132
Lot 133
Lot 135
Lot 136
Lot 137
Lot 138
Lot 139
Lot 140
Lot 141
Lot 142
Lot 143
Lot 144
Lot 145