UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SOUTH SHORE MENTAL HEALTH CENTER, INC., et al

*Plaintiffs,*

vs.

THE TOWN OF HOPKINGTON, et al

*Defendants.*

C.A. No. 07-454ML

**DEFENDANTS' MOTION TO DISMISS**

Defendants— The Town of Hopkington, Vincenzo Cordone, individually and in his capacity as President of the Hopkington Town Council, Beverly Kenney, individually and in her capacity as Vice President of the Hopkington Town Council, and Thomas E. Buck, Sylvia K. Thompson and Barbara A. Capalbo, individually and in their capacities as Members of the Hopkington Town Council—hereby move, pursuant to Rule 12(b)(6), for dismissal of the instant action in lieu of Answer. In support thereof, Defendants rely on their memorandum of law filed herewith.

Defendants,
By their attorneys,

*/s/ Marc DeSisto*
*/s/ Michael A. DeSisto*

Marc DeSisto (#2757)
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

and,

*/s/ Patricia A. Buckley*

Patricia A. Buckley, Esq. (#2987)
Carroll Kelly & Murphy
400 Turks Head Building
Providence, RI 02903
(401) 331-7272
(401) 331-4404 fax
pbuckley@ckmlaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 27th day of June, 2008, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

Douglas J. Emanuel
demanuel@crfllp.com

*/s/ Michael A. DeSisto*

Michael A. DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SOUTH SHORE MENTAL HEALTH CENTER, INC., et al<br><br>*Plaintiffs,*<br><br>vs.<br><br>THE TOWN OF HOPKINTON, et al<br><br>*Defendants.* | C.A. No. 07-454ML |

**DEFENDANTS'[1] MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## I. INTRODUCTION

The instant case arises from the refusal of the Hopkinton Town Council to execute an amendment to its Water Agreement with the Town of Richmond. The amendment would benefit two of the Plaintiffs in a land development project they wish to locate in Hopkinton. Plaintiffs have filed the within lawsuit against the Defendants – the Town of Hopkinton and the Hopkinton Town Council members in their official and individual capacities - seeking to compel the execution of the amendment and requesting damages based on a multitude of state law and federal constitutional law theories. Defendants file this motion to dismiss on the grounds that Plaintiffs' Complaint fails to state facts sufficient to make out a cognizable claims against them and respectfully request that this Court dismiss Plaintiffs' Amended Complaint.

[1] The Town of Hopkinton, Vincenzo Cordone, individually and in his capacity as President of the Hopkinton Town Council, Beverly Kenney, individually and in her capacity as Vice President of the Hopkinton Town Council, and Thomas E. Buck, Sylvia K. Thompson and Barbara A. Capalbo, individually and in their capacities as Members of the Hopkinton Town Council.

## II. PLEADINGS

According to the Complaint, Plaintiff, Women's Development Corp., a Rhode Island not-for-profit corporation ("WDC"), develops low and moderate income housing. *Plaintiffs' Amended Complaint*, ¶¶ *2 and 14*. In 2005, Plaintiff WDC and Plaintiff, South Shore Mental Health Center, Inc., another Rhode Island not-for-profit corporation ("SSMHC") (collectively, "Plaintiffs"), submitted an application with the Hopkinton Planning Board to construct a 30-unit low income housing development on Bank Street in Hopkinton. *Id. at* ¶ *24*. Neither WDC nor SSMHC own the land; apparently, they possess an option to purchase it from the owner. *Id*.

As part of the development process, Plaintiffs sought permission to connect into a water line on Main Street.[2] *Id. at* ¶*34*. This water line carries potable water which Hopkinton purchases from the Town of Richmond ("Richmond") pursuant to a Water Agreement. *Id. at* ¶¶ *16, 17 and 26*. Evidently, in order for Plaintiffs to tap into the water line, the Water Agreement had to be amended by the Town of Hopkinton ("Town") and Richmond ("WDC Amendment"). *Id. at* ¶ *42*. Further, because the water line is not located on Bank Street, a utility easement was needed to tap into the Main Street water line. *Id. at* ¶ *34*. According to the Complaint, Richmond agreed to the WDC Amendment as did as the Hopkinton Planning Board. *Id. at* ¶¶ *42 and 46*. On July 18, 2007, WDC requested that the Town execute the WDC Amendment to the Water

[2] In their Amended Complaint, Plaintiffs describe the location of the water line as "the water line adjacent to the Bank Street location." *Id. at*¶ *26*. In order to avoid any confusion about the location of the water line and Plaintiffs' proposed development: while Plaintiffs' proposed development is located on Bank Street, the water line is located on Main Street which runs parallel to Bank Street. *Id. at* ¶ *34*. *See also, Final Plan Submission for "Wood River Village" Plat 28 Lot 122 which was attached to the April 16, 2008 letter from Plaintiffs' attorney to this Court, a copy of which Plan is attached hereto as Exhibit* A.

Agreement. Id. *at* ¶ *49*. When the Town Council did not approve the WDC Amendment, Plaintiffs filed the instant lawsuit.

The Complaint contains a myriad of federal and state law claims against the Town and Town Council members who are named in both their official and individual capacities. In Count I, Plaintiffs contend that the Town violated the R.I. Open Meetings Act, R.I.G.L. § 42-46-1, et seq. This claim is based on alleged "scripted remarks" made by one Town Council member at a meeting on August 20, 2007. In Count II, Plaintiffs claim that they are intended third-party beneficiaries of the Water Agreement which provides them with standing to enforce the Water Agreement. They contend that the Town's failure to execute the WDC Amendment is a breach of the Water Agreement. Count III asks the Court to declare that the Town has unreasonably withheld or delayed its consent to the execution of the WDC Amendment. Counts IV and V allege violations of Plaintiffs' rights to substantive due process and equal protection under the United States and Rhode Island Constitutions. In Count VI, Plaintiffs ask the Court to issue a writ of mandamus ordering the Town to execute the WDC Amendment. The last count, Count VII, alleges that the failure of the Town and Town Council, to execute the WDC Amendment violates the Fair Housing Act, 42 U.S.C. § 3604.

Plaintiffs filed this Complaint in the Washington County Superior Court on November 9, 2007. Defendants accepted service of the Complaint, through their attorney, on November 15, 2007. On December 10, 2007, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. By stipulation, Plaintiffs graciously agreed to allow Defendants until January 18, 2008 to file a Motion to Dismiss the Complaint in lieu of an Answer. (Document 3). Defendants' Motion to Dismiss was

filed on January 17, 2008. (Document 4). Plaintiffs duly objected to the motion and filed a Memorandum in Opposition (Document 7) and Defendants filed a Reply Memorandum. (Document 8).

On April 15, 2008, the Court conducted a telephone conference to inquire whether Plaintiffs' lot (Lot 122 on Assessor's Plat 28) was referred to in the original Water Agreement between Richmond and Hopkinton. Lot 122 was not mentioned in the Water Agreement but Plaintiffs' attorney informed the Court, by letter dated April 16, 2008, that a utility easement and right of way had been obtained over Lot 141 which was mentioned in the Water Agreement. On May 20, 2008, the Court held another telephone conference because this easement and right of way over Lot 141 was not referred to in Plaintiffs' Complaint. To address this issue, Plaintiffs were allowed to file an Amended Complaint and Defendants withdrew their Motion to Dismiss for later filing. Plaintiffs filed their Amended Complaint on May 29, 2008. (Document 11).

## III. STANDARD OF REVIEW – MOTION TO DISMISS

Defendants file the instant Motion pursuant to Rule 12(b)(6) and seek dismissal of the instant action in lieu of answer. The standard of review on a motion to dismiss in lieu of answer is well-settled. First, this Court must take all well-pleaded factual averments as true. However, it "need not credit a complaint's 'bald assertions' or legal conclusions." *Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)(citations omitted).* In judging the adequacy of a plaintiff's allegations, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation" carry no weight. *Puertorriquenos En Accion v. Herenandez, 367 F.3d 61, 68 (1st Cir. 2004); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).* Berner v.

Delahanty, *129 F.3d 20, 25 (1st Cir. 1997).* Thus, Courts have noted that although "this standard is diaphanous, it is not a virtual mirage." Berner, *129 F.3d at 25.* This Court's role is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004) quoting Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).*

## IV. ARGUMENT

### A. Plaintiffs' Complaint Fails to Allege Sufficient Facts to State an Open Meetings Act Claim.

In Count I of their Complaint, Plaintiffs contend that Defendants have violated the Open Meetings Act ("OMA"). The OMA was enacted to ensure that the "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making public policy." *R.I. Gen. Laws § 42-46-1.* To accomplish this purpose, the OMA sets forth certain requirements that public bodies must adhere to in the conduct of their business. Principally, the OMA is a notice statute; it requires that public bodies, such as the Defendant Hopkinton Town Council, give written notice of their meetings within a specified time frame. *R.I. Gen. Laws § 42-46-6.* "The notice shall include the dates, times, and places of the meetings, and a statement specifying the nature of the business to be discussed." *R.I. Gen. Laws § 42-46-6(b). See also Tanner v. Town Council, 880 A. 2d 784, 797 (R.I. 2005), (meeting notice provided by the East Greenwich Town Council complied with OMA); Edwards v. State, 677 A.2d 1347 (R.I. 1996) (violation of OMA by failing to publish adequate notice); Graziano v. R.I. State Lottery*

Comm'n, *810 A.2d 215 (R.I. 2002).* The OMA also requires that all public bodies, such as Defendant, keep written minutes of their meetings. *R.I. Gen. Laws § 42-46-7*.

Plaintiffs do not complain about the notice or minutes for the August 20, 2007 Town Council meeting. Instead, they complain about "scripted remarks" made by one of the Town Council members. Plaintiffs contend that these remarks "suggest[] that one or more members of the Town Council had developed the proposal outside the open and public manner required by [the OMA]." *Plaintiffs' Complaint, ¶ 47*. In the first instance, the OMA does not prohibit scripted remarks by a Town Council member. If anything, it encourages scripted remarks to ensure an orderly and efficient meeting. The OMA insures that everyone, including town councilors, know, in advance, the matters to be considered at a town council meeting. This notice allows town councilors, as well as the public, to be prepared for the meeting. The preparation might include, for example, the specific wording of a proposed course of action. It is not unusual for even members of the public to prepare their remarks on an issue in advance of the meeting. In fact, it would be highly unusual, and inefficient, not to prepare remarks or proposals in advance of a particular meeting. "Scripted remarks" by Councilperson Thompson are not an OMA violation.

The allegation that "one or more members" may have developed the proposal also falls flat. First, this allegation is, at best, a bald assertion, i.e., a broad assertion or legal conclusion. Plaintiffs' Complaint does not identify the number or identity of these members. The allegation itself is indefinite as Plaintiffs contend that Defendants "may" have developed the proposal. This Court need not credit a complaint's bald assertions. *Shaw, 82 F.3d at 1216*. Second, if Plaintiffs intend to imply that Defendants met to

develop the proposal, the number who met is a necessary and important fact. The reason: it is not an OMA violation for one or two Town Council members to develop a proposal outside of a public meeting. In order for the OMA to apply, a quorum of a public body must convene for a meeting. *Fischer v. Zoning Board of the Town of Charlestown, 723 A.2d 294, 295 (R.I. 1999).* A quorum consists of a majority of the members of the public body. *R.I.G.L. § 42-46-2(d).* Therefore, the allegation that one or more members may have met to develop the proposal is insufficient to state an OMA violation and fails as a matter of law.

In their Memorandum in Opposition (Document 7)(but not in their Complaint or Amended Complaint), Plaintiffs argue that it is a violation of the OMA for three members to have deliberated Councilperson Thompson's remarks either together or, in sequence if not together. These pronouncements on the law may be correct, but they are ultimately irrelevant because Plaintiffs' Amended Complaint does not contain these factual averments. The Amended Complaint does not state that three members of the Council got together either in person, or in sequence, to "deliberate" the "scripted remarks." It simply "suggests" that one or more members may have developed the proposal outside of the open meeting. But, as stated *supra*, the number of members is absolutely essential for an OMA claim. One or two members deliberating scripted remarks is not an OMA violation. Unless Plaintiffs are prepared to state that three Council members deliberated the "scripted remarks" either in person or in sequence, then the factual averments contained in Plaintiffs' Amended Complaint, even if true, do not state an OMA claim.

Plaintiffs have not made this necessary factual averment because they have no such facts. As Plaintiffs stated in their Memorandum in Opposition, "discovery" is needed to reveal whether their "allegations" are "meritorious." Defendants should not be subjected to defending a claim based simply on speculation and Plaintiffs' hope that, somewhere along the way, facts may emerge to support their claim. Plaintiffs had other methods at their disposal to investigate whether Defendants violated the OMA. *See e.g., R.I.G.L. § 42-46-8(a) ("Any citizen or entity of the state who is aggrieved as a result of violations of the provisions of this chapter may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general determines that the allegations of the complaint are meritorious he or she may file a complaint on behalf of the complainant in the superior court against the public body.")*

Plaintiffs' OMA claim must fail because the factual averments in their Amended Complaint are insufficient to state a claim upon which relief may be granted. Defendants respectfully request that judgment enter in their favor on Count I of Plaintiffs' Amended Complaint, the Open Meetings Act violation.

**B. Plaintiffs Lack Standing on their Breach of Contract Claim because They are not Intended Third-Party Beneficiaries of the Water Agreement.**

Plaintiffs[3] contend that the refusal of the Defendant Town Council members to approve the WDC Amendment constitutes a breach of the Water Agreement. *Plaintiffs' Complaint,* ¶ *68*. Plaintiffs are not a party to the Water Agreement but claim standing as intended third party beneficiaries. *Id. at* ¶ *66.* Defendants seek dismissal of Count II on two separate grounds. First, Plaintiffs cannot satisfy the intended third-party beneficiary

[3] The Plaintiffs making this claim are WDC and SSMHC only.

test. Second, even if Plaintiffs could satisfy the test, Defendants have not breached the Water Agreement.

In Rhode Island, an intended, but not an incidental, third-party beneficiary can maintain a breach of contract action for damages resulting from a contract breach between two other contracting parties. *Forcier v. Cardello, 173 B.R. 973, 984 (D.R.I 1994).* In making this determination, Rhode Island follows the test set forth in *Section 302 of the Restatement (Second) of Contracts* which states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the intended promise.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Id*. This test "essentially requires that the parties directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended beneficiary." *Id*. Plaintiffs fail the Restatement test because the Water Agreement makes absolutely no mention of them.

Defendants are well aware that this court must take all well-pleaded factual averments as true. However, the caveat is that the court "need not credit a complaint's 'bald assertions' or legal conclusions." *Shaw, 82 F.3d at 1216.* In the instant case, Plaintiffs simply make the bald assertion that they are intended third-party beneficiaries of the Water Agreement without any factual allegations to support this legal conclusion.

These factual allegations are missing because none exist that would support Plaintiffs' third-party beneficiary legal conclusion.

The Water Agreement contains no mention of the lot on which Plaintiffs' seek to construct their development. *The Water Agreement is attached as Exhibit B*. This failure to mention Plaintiffs' lot is significant for two reasons. First, "unless the parties to a contract explicitly state otherwise, or absent circumstances which clearly indicate that performance under the contract is for the benefit of a third party, the law presumes that parties enter into a contract for their own benefit and not for the benefit of a third party." *Forcier, 173 B.R. at 985 quoting Rhode Island Depositors Economic Protection Corporation v. Ernst & Young, C.A. No. 92-1120 (R.I. Super. Ct., March 11, 1994). (emphasis added)* There is nothing in the Water Agreement which explicitly or clearly indicates that it is for the benefit of Plaintiffs.

Second, a "promissor's mere awareness that someone other than the promisee may derive a benefit from the promissor's performance under the contract is insufficient to cloak that third party with the mantle of intended beneficiary." * * * Mere knowledge or awareness of a potential benefit cannot, without more, prove an explicit intent to confer a benefit, and plaintiffs must show a clear intent to benefit in order to state a claim as an intended beneficiary." *Id. at 986*. Even if Plaintiffs had alleged knowledge or awareness of a potential benefit, it would still not be enough to sustain a claim as a third-party beneficiary.

In their Memorandum in Opposition, Plaintiffs argue that "[i]t is inconceivable to characterize the Water Agreement as anything other than a contract between the Town and Richmond for the benefit of third parties – individual residents of Hopkinton * * * .

More specifically, the Water Agreement is for the benefit of residents of Hopkinton who can be served by an extension of Richmond's water line." *Memorandum in Opposition (Document 7), p. 8*.

Initially, Defendants state the obvious: there is a difference between an incidental beneficiary of a contract and an intended beneficiary. An incidental beneficiary cannot maintain a breach of contract lawsuit. So, while the Water Agreement may incidentally benefit Hopkinton residents, that incidental benefit does not allow them to file a breach of contract lawsuit against the parties to the Water Agreement. Secondly, most, if not all, contracts entered into by a municipality "benefit" its residents. Why else would a municipality enter into a contract, except to benefit its residents? But, that incidental benefit does not allow a resident to file a breach of contract lawsuit unless that resident can meet the very strict standards of proving that he or she is an intended third-party beneficiary.

It is noteworthy that, in responding to Defendants' arguments, Plaintiffs do not point to any provision of the Water Agreement to support their argument that they were intended third-party beneficiaries. An examination of the Water Agreement reveals why: not only is there no language to support Plaintiffs' claim, the language actually supports the opposite proposition. On page 1 of the Water Agreement, at paragraph 1, it states that "[t]he water so provided shall service a maximum of 65 users * * *." Plaintiffs do not allege, nor can they, that they are one of those 65 users. Further, Exhibit A to the Water Agreement lists the lots that are to be provided water. Once again, Plaintiffs do not allege, nor can they, that their lot is one of the lots listed on Exhibit A. Unlike these 65

users or lot owners, Plaintiffs cannot present any factual averment that they are intended third-party beneficiaries of the Water Agreement.

In their recently filed Amended Complaint, Plaintiffs attempt to skirt around this failure by pointing to a utility easement acquired during the planning process. Pursuant to this utility easement, the owner of Lot 122 (Plaintiffs' lot) may run utility lines, including a water line, across Lot 141, a lot which is mentioned in the Water Agreement. However, this easement does not help Plaintiffs. To reiterate, the Water Agreement states that "[t]he water so provided shall service a maximum of 65 users * * * as listed by plan and lot number in Exhibit A." The water service the Plaintiffs seek is not being provided for Lot 141; it is being provided for a lot <u>not mentioned</u> in the Water Agreement.[4] If Plaintiffs argument is accepted then the water service users could be exponentially expanded, beyond the stated and listed 65 users, by simply granting utility easement after utility easement to other non-listed lot owners. Under Plaintiffs' theory, these non-listed lot owners could then argue that they were all intended third-party beneficiaries of the Water Agreement. This scenario would make a mockery of the Water Agreement. Plaintiffs have not alleged sufficient facts to sustain their third-party beneficiary claim.

Even if Plaintiffs were third-party beneficiaries, they offer no factual allegations to support their legal conclusion that Defendants breached the Water Agreement by failing to sign the WDC Amendment. The closest Plaintiffs come to a factual allegation is that Defendants' "consent has been unreasonably refused and/or delayed." *<u>Plaintiffs' Complaint</u>, ¶¶ 67 and 68*. But, Plaintiffs do not allege how failing to sign the WDC

---

[4] The dwelling on Lot 141, a lot specifically identified in the original Water Agreement, was issued a construction permit to connect to the water line for that dwelling only on May 31, 2007.

Amendment constitutes a breach of the Water Agreement. Plaintiffs certainly do not contend that Paragraph 14 of the Water Agreement - which contains the consent language - requires Defendants to sign every proposed amendment to the Water Agreement. If so, the Water Agreement loses its status as a contract as it becomes illusory. Further, Plaintiffs take Paragraph 14 out of context. This paragraph refers to approval or consent "pursuant to any provision of this agreement." Plaintiffs do not reference the provision of the Water Agreement that requires Defendants to amend the Agreement in these particular circumstances. The reason: such a provision does not exist. There is no provision that requires the Town to consent to any and all proposed amendments to the Water Agreement. Plaintiffs cannot sustain their breach of contract claim even if they were third-party beneficiaries.

Defendants respectfully request that this Court enter judgment in their favor on Count II of Plaintiffs' Amended Complaint, the breach of contract claim.

### C. Defendants are Entitled to Judgment on Plaintiffs' Substantive Due Process Claim because Plaintiffs do not have a Property Interest and Defendants' Conduct was not Egregiously Unacceptable, Outrageous, or Conscious-Shocking.

Plaintiffs' allege that the Town Council's decision not to execute the WDC Amendment to the Water Agreement constitutes a substantive due process violation under the United States and Rhode Island Constitutions. In order to prove a substantive due process violation, Plaintiffs must first establish a property interest as defined by state law. *See Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002) ("To establish a due process claim, substantive or procedural, appellants must first establish a property interest.")* Defendants contend, for the reasons set forth *infra*, that Plaintiffs cannot

establish a property interest thereby condemning its substantive due process claim. Even if Plaintiffs could overcome this hurdle, its substantive due process claim would still fail as the second hurdle is even higher than the first one.

The United States Constitution does not define what constitutes a constitutionally protected "property interest." "Rather, [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law*."* *Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161; 101 S.Ct. 446, 451 (1980) quoting Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2709 (1972)*. Someone seeking to establish a property interest must clearly have more than an abstract need or desire for it. There must be more than a unilateral expectation of it. Instead, there must be a legitimate claim of entitlement to it. *Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002)*.

What is the property interest claimed by Plaintiffs in the instant case? Initially, Defendants believed that Plaintiffs claimed property interest was the right to tap into the water line on Bank Street. However, in their Memorandum in Opposition, Plaintiffs identified their property interest as "'the right of affordable, accessible, safe and sanitary housing' itself is 'necessary to assure the health, safety and welfare of all citizens of this state.'" *Memorandum in Opposition, p. 11*. According to Plaintiffs, this property interest emanates from R.I.G.L. § 45-53-2. However, R.I.G.L. § 45-53-2 does not mandate or create a constitutionally protected property interest in affordable, accessible, safe and sanitary housing. It is simply a broad statement of legislative findings and intent of the Rhode Island General Assembly related to low and moderate income housing. Further, Plaintiffs do not seek residence in affordable, accessible, safe and sanitary

housing (nor could they as they are entities, not individuals). Plaintiffs have not identified a constitutionally protected property interest sufficient to satisfy the first element of a substantive due process claim.

Even if Plaintiffs could establish a property interest, they could not establish the second element of substantive due process. "A viable substantive due process claim requires proof that the state action was 'in and of itself . . . egregiously unacceptable, outrageous, or conscious-shocking.'" *Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994) quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* Further, as the First Circuit has on many occasions stated

> [R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest.

*PFZ Properties, Inc., 928 F.2d at 31-32. (internal citations and quotations marks omitted).*

The standard necessary to establish abuse of government power is a high one. *Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F. 2d 32, 45 (1st Cir. 1992).* The reason for this high standard is the difficulty in deciding what abuses constitute abuses of substantive due process. *Id*. Therefore, the First Circuit has consistently held that, ordinarily, substantive due process claims may not be used to involve the federal court in local planning disputes. *Id*. Even "even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations." *Amsden, 904 F.2d at 757. See*

*also,* *PFZ Properties,* *927 F.2d at 32 ("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.")* The Court has, however, "left the door slightly ajar for federal relief in truly horrendous situations. *Id.*

There was nothing egregiously unacceptable, outrageous, or conscious-shocking about Defendants' actions in the instant case. They simply declined to execute an amendment to the Water Agreement. While Plaintiffs allege that Defendant Thompson read from scripted remarks prepared prior to the Open Meeting of the Town Council, there is nothing egregiously unacceptable, outrageous or conscious-shocking about that conduct. The First Circuit standard is clear: "[i]n the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* "Where a license or permit denial [or revocation] is involved, the class of cases which meets the constitutional threshold is narrowly limited." *Collins v. Nuzzo, 244 F.3d 246, 250 & 251 (1st Cir. 2001).* In fact, such a violation has been found to occur only in a "truly horrendous situation." *Nestor Colon Medina, 964 F.2d at 45.* The standard is "unforgiving" and "guards against insinuating the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals." *Id.* *(internal quotations omitted).*

Substantive due process protection is not triggered by merely unsound or erroneous government decisions. *Rivera v. Fagundo, 310 F. Supp. 2d 428, 435 (D.P.R. 2004).* Rather, "[i]ts use is limited to those specific instances involving egregious abuse of governmental

power which the courts find shocking." Id. *citing* Collins v. City of Harker Heights, *503 U.S. 115 (1992).*[5] In Co. of Sacramento v. Lewis, *523 U.S. 833 (1998)*, the United States Supreme Court "clarified the law of substantive due process and made pellucid that conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot v. Raffaelly, *424 F.3d 112, 118 n.4 (1st Cir. 2005) (emphasis added) citing* Lewis, *523 U.S. at 846-47 and* Hawkins v. Freeman, *195 F.3d 732, 738-39 (4th Cir. 1999) (en banc) (underscoring the "shock the conscience" prerequisite in executive action cases*). Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." Torromeo v. Town of Fremont, *438 F.3d 113, 118 (1st Cir. 2006) quoting* SFW Arecibo Ltd. v. Rodriguez, *415 F.3d 135, 141 (1st Cir. 2005) (internal citations omitted).* Defendants submit that even taking the allegations in the Complaint in the light most favorable to Plaintiffs, the allegations fail to rise to the level of a "truly horrendous situation" that shocks the conscience in manner that violates substantive due process guarantees. See i.e. Blain v. Twp. of Radnor, *167 Fed. Appx. 330 (3d Cir. 2006) (frivolous or non-meritorious appeal, condemnation threat, conflict of interest, and improper denial of a subdivision plan did not rise to the level of impropriety needed to "shock the conscience.");* Thornbury Nobel, Ltd. v. Thornbury Township,

---

[5] The First Circuit has actually rejected substantive due process claims premised on malicious official action as well as local licensing authority's outright violation of state law. Amsden, *904 F.2d at 757;* Roy v. City of Augusta, *712 F.2d 1517, 1523 (1st Cir. 1983);* Creative Environments, Inc. v. Estabrook, *680 F.2d 822 (1st Cir. 1981).* See also Collins, *244 F.3d at 246.*

*2003 U.S. Dist. LEXIS 25985, (October 22, 2004)(holding that in the land use environment, favoring one development over another for the purpose of preserving open space in the township does not shock the conscience or give rise to substantive due process claim).*

Contrary to the Plaintiffs' contentions, the Town is not attempting to recast this case in the light of a denied zoning permit or project application. These cases, some of which are in the zoning and planning area, illustrate the high standard necessary to state a substantive due process claim. The factual allegations of Plaintiffs' Complaint simply do not rise to that high standard as set forth in Defendants' Memorandum. Plaintiffs have not alleged sufficient factual averments to state a substantive due process claim. Defendants respectfully request that this Court enter judgment in their behalf on the substantive due process claim contained in Count IV of Plaintiffs' Amended Complaint.

**D. Defendants are entitled to Judgment on Plaintiffs' Equal Protection Claim because Plaintiffs were not Selectively Treated Compared with Other Similarly Situated Persons nor can Plaintiffs Present Evidence of Gross Abuse of Power by Defendants.**

Count V of Plaintiffs' Complaint contends that Defendants have violated the Equal Protection Clause under both the Federal and State Constitutions. "The *Equal Protection Clause* contemplates that similarly situated persons are to receive substantially similar treatment from their government." *Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)*. In order to establish their claim, Plaintiffs must present evidence that (1) "compared with others similarly situated, [it] was selectively treated" and (2) the selective treatment was " based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id. (citations omitted.)* The Complaint does not

allege facts sufficient to meet the elements necessary to prove Plaintiffs' equal protection claim.

A plaintiff "claiming an equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression." *Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)(citation and internal quotations omitted.)* "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. * * * Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples. *Tapalian, 377 F.3d at 6 (citations omitted.)*

In the instant case, Plaintiffs are silent on what other similarly situated individuals or entities were treated differently by Defendants. The Complaint does not identify others who were similarly situated or provide instances of different treatment. Count V simply alleges that the Town agreed to amend the Water Agreement in December, 1993 and has refused to consent or execute the WDC Amendment to the Water Agreement. *Plaintiffs' Complaint,* ¶ *84*. Even if true, this allegation falls well short of establishing the similarly situated standard. This allegation is too general to be of any use because it does not "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." *Rubinovitz, 60 F.3d at 910.* For example, Plaintiffs do not state whether the December 1993 Amendment was similar to the WDC Amendment. According to the Complaint, it seems dissimilar because Plaintiffs claim that the December 1993 Amendment expanded the locations and number of users within

the Town. *Plaintiffs' Complaint,* ¶ *68*. Plaintiffs do not identify the users of the December 1993 Amendment. The Complaint contains no allegations that these other users were building developers who sought permission to tap into the water line to provide water to their development. There is simply no evidence or allegations that similarly situated developers received the same approval sought by Plaintiffs.

Defendants submit that the reason Plaintiffs did not provide this factual information is that it does not exist and because Plaintiffs have not experienced any dissimilar treatment. However, whatever the reason, the failure to present evidence of specific instances of similarly situated persons or entities receiving different and more favorable treatment than Plaintiffs dooms their equal protection claim. As noted *supra*, the Court "need not credit a complaint's 'bald assertions' or legal conclusions." Shaw v. Digital Equipment Corp., *82 F.3d 1194, 1216 (1st Cir. 1996)(citations omitted).*

Even if Plaintiffs had been able to establish the first prong of the analysis, they cannot meet the second prong. As stated *supra*, the second prong requires evidence of selective treatment based on impermissible grounds. These impermissible grounds are "race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz, 60 F.3d at 910.* Race, religion and/or intent to inhibit or punish the exercise of constitutional rights are not the grounds alleged or claimed by Plaintiff.[6] The only ground left is malicious or bad faith intent to injure a person. To prove this ground, it is not enough that the Defendants'

[6] Plaintiffs contend that the mentally disabled and citizens of low and moderate income are "suspect classes." *Plaintiffs' Complaint* ¶ 70. However, these "suspect classes" fall short of the impermissible grounds necessary for an Equal Protection violation even if they can be considered "suspect classes." See e.g., *Currie v. Group Ins. Comm'n*, 290 F.3d 1, 27 (1st Cir. 2002) ("It is well-settled that the disabled do not constitute a suspect class. * * * As discussed previously, the right to be free from disability discrimination is not fundamental . . ."); and *Judge v. City of Lowell*, 160 F.3d 67, 76 (1st Cir. 1998) (which references *San Antonio Independent School Dist. v Rodriguez*, 411 U.S. 1, 36 (1973) income level is not a suspect class under the Equal Protection Clause.)

actions were simply arbitrary or erroneous. *Tapalian, 377 F.3d at 6*. Instead, Plaintiffs must establish that the actions constituted a "gross abuse of power." *Id*. Gross abuse of power, bad-faith or malicious-intent-to-injure cases are infrequent. *Rubinovitz, 60 F.3d at 911*. Therefore, "the malice/bad faith standard should be scrupulously met." *Id*. *(citations and internal quotations omitted.)*

"In the field of local permits, the nature of the government conduct (or misconduct) required to establish either a substantive due process or an equal protection claim is so similar as to the compress the inquiries into one. * * * In equal protection cases, we have articulated the need to establish a gross abuse of power, invidious discrimination or fundamentally unfair procedures" *Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000). (citations and internal quotations omitted.)* Therefore, an arbitrary denial of a permit does not meet the constitutional threshold for equal protection and substantive due process claims, even if the denial was in violation of state law and in bad faith. *Baker, 230 F.3d at 474. (emphasis added.)* As the *Baker* court stated, there is a "marked difference between the inevitable misjudgments, wrongheadedness, and mistakes of local government bureaucracies and the utterly unjustified, malignant, and extreme actions of those who would be parochial potentates." *Id*. *See also, Barrrington Cove Limited Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d 1, 11 (1st Cir. 2001) ("[T]he mere fact that appellees may have violated or abused federal or state regulatory regimes by imposing the charitable contribution requirement upon Barrington, in effect wrongfully imposing an application "fee" in excess of regulatory limits, has no direct bearing on whether appellees violated Barrington's equal protection rights.")*

Rubinovitz illustrates the level of extreme conduct necessary for the gross abuse of power/malice/bad faith standard. In that case, a city official allegedly engaged in a vendetta against plaintiffs because they evicted her friend from their rental apartment. The official enlisted other city officials to cut off plaintiffs' utility services, charge plaintiffs with building code violations and interfere with their hiring of a building contractor. The Rubinovitz court determined that there was enough of an indication of a malicious orchestrated campaign causing substantial harm – "though only barely enough evidence" – for plaintiffs to survive summary judgment. *Rubinovitz, 60 F.3d at 912.* In Baker, the court observed that Rubinovitz "illustrates the extreme malicious orchestrated campaign need to surmount the constitutional threshold." *Baker, 230 F.3d 474.*

In the instant case, Plaintiffs do not allege the extreme malicious orchestrated campaign necessary to establish gross abuse of power. According to the Complaint, the Town Council essentially tabled WDC's request for the execution of the WDC Amendment. *Plaintiffs' Complaint, ¶ 58.* Even the allegation that Defendant Thompson read from scripted remarks prepared prior to the meeting does not rise to the level of extreme conduct necessary for the gross abuse of power/malice/bad faith standard.

This fact is evident when Defendants' conduct is contrasted with that of the defendant in Tapalian. In that case, the First Circuit noted that the trial record was "laden with the language of personal malice and 'bad faith' retaliation, aimed at punishing Tapalian immediately following his rejection of Tusino's (the DPW Director) request that Tapalian supply him with 'two women.'" *Tapalian, 377 F.3d at 7.* The malice/retaliation included Tusino imposing onerous and costly conditions on Tapalian's development project. Many of these conditions violated a previous court agreement and

served no legitimate purpose. Id. Further, Tusino's assistant told Tapalian's contractor that "Tusino was intent on deliberately busting [Tapalian's] balls." Id. These activities were sufficient to find that Tusino had engaged in a malicious orchestrated campaign causing substantial harm constituting a gross abuse of power. *See also* *Esmail v. Macrane*, *53 F.3d 176, 178, 180 (7th Cir. 1995) (viable equal protection violation where "a powerful public official picked on a person out of sheer vindictiveness" in "a spiteful effort to get him for reasons wholly unrelated to any legitimate state objective.")* In the instant case, Defendants' conduct does not come close to constituting a gross abuse of power.

Plaintiffs cite three paragraphs of their Complaint which they claim are sufficient factual averments to state their equal protection violation claim. These paragraphs state, in substance, that a) the Water Agreement exists between the Town and Richmond, b) the Town and Richmond have previously amended the Water Agreement for two additional lots, and c) the Town now refuses to execute a second amendment for Plaintiffs' lot. Plaintiffs contend that these facts are sufficient to state a violation of the Equal Protection Clause under the United States and Rhode Island Constitutions. But, is this true? If these facts were presented to this Court, and accepted as true and accurate, would "the pleader be entitled to relief?"

Defendants contend that the pleader would not be entitled to relief because those bare facts do not state an equal protection violation. It is not enough to allege that the Town had previously amended the Water Agreement for another party. By itself, that factual averment does not satisfy the first element of an equal protection violation claim. To state such a claim, the other party must have been similarly situated and Plaintiffs

were selectively treated differently. These necessary factual averments are missing from Plaintiffs' Complaint. Similarly, the factual averment that the Town said "no" to the WDC Amendment - even if true – is insufficient to state an equal protection claim. "Although there is no heightened pleading standard for civil rights claims, mere conclusory allegations of discrimination unsupported by an facts are insufficient for notice pleading purposes." *Toledo v. Sanchez, 454 F.3d 24, 34 (1st Cir. 2006).* Plaintiffs must state facts that the selective treatment was based on an impermissible ground. Without these basic factual averments, Plaintiffs' Complaint fails to state an equal protection claim violation.

Plaintiffs cannot establish the elements necessary for their equal protection claim and Defendants respectfully request that this Court enter judgment in their favor on Count V of Plaintiffs' Amended Complaint.

**E. Defendants are entitled to Judgment on Plaintiffs' Declaratory Judgment and Writ of Mandamus Claims because Plaintiffs cannot Establish the Elements of either Claim.**

Plaintiffs cannot meet the high standard necessary for the writ of mandamus they seek in Count VI of their Complaint. "A writ of mandamus is an extraordinary remedy, one that a court should not grant except when the petitioner has a clear legal right to the requested relief, the respondent has a ministerial legal duty to perform the requested act without discretion to refuse, and the petitioner possesses no adequate remedy at law." *Krivitsky v Town of Westerly, 849 A.2d 359, 362 (R.I. 2004).* Plaintiffs simply make the unsupported allegation that they have a clear legal right – and the Town Council has a ministerial legal duty - to the execution of the WDC Amendment. Plaintiffs, however, do not identify the source of this clear legal right or ministerial legal duty. These allegations

amount to bald assertions and legal conclusions which need not receive credit by this Court. Shaw, *82 F.3d at 1216.*

Assuming the source of this clear legal right is the Water Agreement, it is clear that approving the WDC Amendment is not a ministerial legal duty. Defendants must use their discretion in deciding whether to accept any amendments to the Water Agreement. They must investigate the facts behind the proposed amendment, consider the factors – pro and con – of acceptance and the repercussions that may flow from their decision. For example, what affect will the amendment have on the Town, does it create a precedent that may affect the Town in the future, is the amendment fair to other Town landowners who may have applied in the past or who may apply in the future, etc. The answers to these questions may be favorable to executing the WDC Amendment but, whatever the ultimate answer, and whether Plaintiffs ultimately agree with it, it requires Defendants to make a discretionary decision. This discretionary decision-making authority precludes mandamus.

The instant case is unlike those cases where the legal duty is clear and ministerial as for example, a recorder of deeds accepting a document for recording in the land evidence records. *See* Redelsperger v. Redelsperger, *43 A.2d 305, 306 ("A recorder of deeds is a purely ministerial officer. He is required by statute to record deeds filed for recording in his office and not to pass upon their validity.")* Here, the Defendant Town Council members are not ministerial officers. Their decision on whether to accept the WDC Amendment is not governed by any statutes or ordinances. Nor does the Water Agreement compel them to accept every proposed amendment to it. They have discretion on whether to accept or reject any proposed amendments. Finally, it is not clear that

Plaintiffs have standing to request mandamus. They are not parties to the Water Agreement, are not mentioned in the Water Agreement and, as set forth *supra*, are not third-party beneficiaries to the Water Agreement. The other contracting party to the Water Agreement has not requested mandamus.

In Count III of the Complaint, Plaintiffs request a declaration that the Town has unreasonably withheld or delayed its consent to, and execution of, the WDC Amendment.[7] Defendants will not repeat, nor belabor, their prior arguments on this subject. Suffice it to say, there is nothing in the Water Agreement that mandates execution of the WDC Amendment by Defendants.

Plaintiffs cannot establish the elements necessary for either their declaratory judgment or writ of mandamus claims and Defendants respectfully request that this Court enter judgment in their favor on Counts VI and III of Plaintiffs' Amended Complaint.

**F. Defendants are not Liable in their Individual Capacities.**

The Defendant Town Council members are sued in both their individual and official capacities. However, Plaintiffs' Complaint lacks sufficient allegations to support individual liability. This dispute arises from the refusal of the Hopkinton Town Council to execute the WDC Amendment. In making that decision, Defendants were acting in their official capacity – as members of the Town Council. They certainly were not acting in their individual capacities because, in their individual capacities, their votes would be meaningless. It is only in their official capacity that their votes count for something and it is only in their official capacity that they can transact the public business.

[7] Plaintiffs' Complaint actually refers to the Water Agreement rather than the WDC Amendment. Defendants assume this reference was inadvertent as Defendants have executed the Water Agreement.

In making this argument, Defendants do not imply that government officials can never be liable in their individual capacities. Unfortunately, self-dealing and other improper conduct by elected individuals is all too prevalent in today's society. However, in the instant case, those allegations are not present. Plaintiffs' Complaint contains no allegations of self-dealing or any activity that goes beyond Defendants executing their duties as Town Council members in their official capacity. The Complaint contains no allegations of wrongdoing in their individual capacities.

Defendants respectfully request that judgment enter in their favor in their individual capacities.

**G. Defendants are entitled to Judgment on Plaintiffs' Fair Housing Act Claim because Plaintiffs cannot Establish the Elements of that Claim.**

In their Amended Complaint, Plaintiffs add a new cause of action, namely, the claim that the Defendants' refusal to execute the WDC Amendment violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3604. *Plaintiffs' Amended Complaint,* ¶ *95*. In order to state a violation of the FHA, Plaintiffs must allege and show either discriminatory intent (disparate treatment) or disparate impact. *Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002). See also, Gamble v. City of Escondido, 104 F.3d 300, 304-305 (9th Cir. 1997)*. It is unclear which theory Plaintiffs advance in this case. However, under either theory, Plaintiffs have failed to allege sufficient facts to state an FHA violation.

"A plaintiff can show discriminatory intent by either direct or indirect evidence." *Caron v. City of Pawtucket, 307 F.Supp.2d 364, 368 (D.R.I. 2004)*. The only direct evidence proffered by Plaintiffs in their Amended Complaint is the "scripted remarks" allegation. Plaintiffs contend that Defendant Thompson reading from scripted remarks moved the Town Council to essentially table WDC's request for execution of the WDC

Amendment. *Plaintiffs' Amended Complaint,* ¶ *58*. Even if true, this allegation falls well short of the direct evidence necessary to deprive Plaintiffs of their rights under the FHA.

In *Macone*, plaintiffs attempted to demonstrate racial discriminatory intent by pointing to, among other things, a comment from a zoning board member. The comment was "I don't think that gives the flavor to what we want in Wakefield." *Macone, 277 F.3d at 5-6*. The court found this one comment by one board member to be insufficient to establish discriminatory intent. *Id*. The allegation in the instant case does not rise even to the level of the rejected *Macone* comment. It is a benign comment without any discriminatory content against mentally disabled individuals. Plaintiffs proffer no direct evidence of discriminatory intent by Defendants against individuals with mental disabilities or other handicaps.

Indirect evidence of discriminatory intent, or disparate treatment, is analyzed under Title VII's burden-shifting, three-stage *McDonnell Douglas/Burdine* test. *Gamble, 104 F.3d at 305; Caron, 307 F.Supp.2d at 369*. The prima facie elements of a disparate treatment claim are: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for a conditional use permit and was qualified to receive it; (3) the conditional use permit was denied despite Plaintiff being qualified; and (4) defendant approved the same zoning action for a similarly situated person, outside the protected class, relatively near the time the defendants denied the plaintiff's zoning action. *Gamble, 104 F.3d at 305. (emphasis added)*. Adapting these factors to the instant case, Plaintiffs cannot satisfy the fourth element of the disparate treatment analysis.

Plaintiffs allege that "[t]he Town has amended the Water Agreement for the benefit of others unaffected by mental disabilities or other handicaps." *Plaintiffs'*

*Complaint,* ¶ *93*. The fourth prong requires that the Town have approved the same action – in this case, executing an amendment of the Water Agreement for a similarly situated person – at relatively near the time the Defendants denied Plaintiffs' action – the refusal to sign the WDC Amendment. According to the Complaint, the Town Council moved "to essentially table WDC's request' to execute the WDC Amendment on August 20, 2007. *Id. at* ¶ *58*. The last Water Agreement amendment, however, was on December 22, 1993, approximately 14 years earlier. *Id. at* ¶ *20. See also, Exhibit 2 to Plaintiffs' Amended Complaint*. Obviously, this last amendment was not relatively near the time of the Town's refusal to execute the WDC Amendment. A 14-year gap exists between the two actions. Defendants also note that, even if the prior amendment were timely, Plaintiffs' Amended Complaint lacks the required allegation that the person for whom it was amended was similarly situated.

Plaintiffs have not alleged sufficient factual averments to establish discriminatory intent by Defendants against individuals affected by mental disabilities or other handicaps.

To establish disparate impact, Plaintiffs must show that Defendants actions "actually or predictably" resulted in mental disability discrimination. *Macone, 277 F.3d at 7*. This task is formidable because "[t]he important distinction between a disparate treatment and disparate impact is that the court looks only at the effect of the Board's actions, and not its motivation." *Id*. "Under the disparate impact theory, a plaintiff must prove actual discriminatory effect, and cannot rely on inference." *Gamble, 104 F.3d at 306*. Plaintiffs' Complaint does not contain any allegations to support actual discriminatory effect. For example, it does not contain any allegations concerning lack of

housing for mentally disabled individuals in the area or historical patterns of discrimination against mentally disabled housing by the Town. Without these allegations, Plaintiffs cannot make out a claim for disparate impact.

As the *Macone* court noted, the FHA "certainly imposes no affirmative obligation on municipalities to approve *all* proposed affordable or minority housing projects." *Macone, 277 F.3d at 7.* Further, Plaintiffs do not allege that that any mentally disabled individual would actually be denied housing in Hopkinton due to the Defendants' actions. *See Macone, 277 F.3d at 8 ("[T]here is absolutely no proof that any minority would actually be denied housing in Wakefield due to the Board's rescission of its approval for the Hillview Estates Project. Therefore, we find that appellants have failed to produce sufficient evidence to establish a prima facie case of discriminatory impact under the Fair Housing Act * * *.")* Absent such allegations, Plaintiffs cannot establish a disparate impact under 42 U.S.C. § 3604.

It should be noted that the only action taken by the Town Council, here, was to refuse to amend the Water Agreement and it is this action which the Plaintiffs must establish as discriminatory. The Town Council did not act to reject or prohibit Plaintiffs' development project – in fact, the project has been approved by the Town's Planning Board – the only body with that authority. The Plaintiffs' assertion that the Town Council's action in refusing to amend the Water Agreement will result in mentally disabled individuals being denied housing is an entirely self-inflicted wound since there is no allegation that this project could not be built in some form using individual or community wells. The Plaintiffs have simply refused to explore these alternatives and,

instead, put all their eggs in the one basket of connection to the Richmond water system – an issue over which the Council and not the Planning Board has authority.

Plaintiffs have not alleged sufficient factual averments to state a claim under 42 U.S.C. § 3604 of the FHA. Defendants respectfully request that this Court enter judgment in their behalf on Count VII of Plaintiff's Amended Complaint

## V. CONCLUSION

For the reasons stated above, as well as for those that may be argued before the Court, these Defendants respectfully request that their motion to dismiss be granted in their favor on all counts of Plaintiffs' Amended Complaint.

Defendants,
By their attorneys,

*/s/ Marc DeSisto*
*/s/ Michael A. DeSisto*
Marc DeSisto (#2757)
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

and,

*/s/ Patricia A. Buckley*

Patricia A. Buckley, Esq. (#2987)
Carroll Kelly & Murphy
400 Turks Head Building
Providence, RI 02903
(401) 331-7272
(401) 331-4404 fax
pbuckley@ckmlaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 27th day of June, 2008, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

Douglas J. Emanuel
demanuel@crfllp.com

*/s/ Michael A. DeSisto*

Michael A. DeSisto