***UNITED STATES DISTRICT COURT***
***FOR THE DISTRICT OF RHODE ISLAND***

SOUTH SHORE MENTAL
HEALTH CENTER, INC., et al.

v. Civil Action No. 07-454-ML

THE TOWN OF HOPKINTON; et al.

***PLAINTIFFS' MEMORANDUM IN OPPOSITION TO***
***DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT***

Plaintiffs South Shore Mental Health Center, Inc. (the "Mental Health Center") and Women's Development Corp. ("WDC") presented the Town Council of the Town of Hopkinton (the "Town") with an opportunity to provide affordable housing to the poor and to the mentally disabled that would help the Town fulfill its own statutory obligation to provide such housing and its own representations to the State of Rhode Island that it contemplated "30 units, 20 for homeownership and 10 for disabled rental housing on Bank Street."

The Town knew that the Mental Health Center and WDC had designed this affordable housing plan with the expectation that an extension of the water line from the Town of Richmond ("Richmond"), which line provided water to certain locations within the Town pursuant to a Water Agreement between the Town and Richmond, would provide water to these new affordable units as well by way of an easement across a lot that, by contract, served by the Water Agreement.

After obtaining all appropriate approvals from the Town's own planning agencies, and after receiving confirmation that Richmond was willing to, and had the capacity to, provide the water to the development, and after obtaining the long-contemplated easement to bring the water from the extension of the Richmond water line to the contemplated development, the Mental Health Center and WDC went to the Town and asked it to execute an amendment to the Water Agreement, to allow the parcel on which the contemplated affordable housing was to be erected to be included within the parameters of the Water Agreement.

The Town refused.

The Town refused to allow Richmond to provide water to an affordable housing development that the Town trumpeted within the Affordable Housing Plan that this Town Council adopted.

The Town refused to allow Richmond to provide water *at no cost to the Town itself* to an affordable housing development that the Town trumpeted within the Affordable Housing Plan that this Town Council adopted.

The Town refused to amend a Water Agreement that it had amended in the past for the benefit of others.

And the Town refuses to acknowledge that its conduct represents arbitrary and capricious government action having no substantial relation to the public health or general welfare, denying the Mental Health Center, WDC and the putative residents of the development crucial constitutional rights.

The Town cannot have it both ways – it cannot represent to the State of Rhode Island that this development would help satisfy its statutory mandate to provide affordable housing with its Town, then fatally table the project by failing to undertake a ministerial act that would have had no repercussions to the Town … other than having an affordable housing complex in its backyard.

Instead, the Town asks this Court to dismiss this case.

The request should be denied.

## ***I. Procedural Background***

Following the Town's egregious decision to deny the request of the Mental Health Center and WDC to amend the Water Agreement, the Mental Health Center, WDC and H. Reed Cosper, in his capacity as Mental Health Advocate for the State of Rhode Island (the "Mental Health Advocate"), filed suit against the Town and the five individuals that comprise the Town Council

(collectively, the "Individual Defendants") in Washington County Superior Court, which Complaint requested that the Court:

(1) find a violation of the Rhode Island Open Meetings Act;
(2) find a breach of contract (as to third-party beneficiaries);
(3) declare the rights of the parties under the Water Agreement;
(4) find a violation of the plaintiffs' substantive due process rights;
(5) find a violation of the plaintiffs' rights under the Equal Protection Clause; and
(6) issue a writ of mandamus to the Town, requiring it to amend the Water Agreement.

After removing the case from the Washington County Superior Court to this Court, the defendants filed a Motion to Dismiss (the "Motion to Dismiss"), arguing that the Complaint failed to state a claim upon which relief may be granted.

After two conferences with the Court, the plaintiffs filed an Amended Complaint, which clarified the plaintiffs' reliance on the Town's conduct in obtaining the easement that would allow the Richmond extension to provide water to the development, and added a claim for relief under the Fair Housing Act. The Town then moved to dismiss the Amended Complaint.

For the reasons set forth herein, the Motion to Dismiss the Amended Complaint must be denied.

## *II. Standard of Review*

When reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "the demands on the pleader are minimal." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988). All that is required of the plaintiffs is that they "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.*

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in a light *most favorable* to the pleader. *In re Credit Suisse First Boston Corp.,* 431 F.3d 36, 51 (1st Cir. 2005). "The well-pled facts must be taken as true and all reasonable inferences must be drawn in favor of the plaintiffs." *Figueroa v. Rivera,* 147 F.3d 77 (1st Cir. 1998). The Court's objective is "to

determine whether the complaint ... alleges facts sufficient to make out a cognizable claim." *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004) (citing *Carroll v. Xerox Corp.,* 294 F.3d 231, 241 (1st Cir. 2002). If, under *any theory,* the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. *See Brown v. Hot, Sexy & Safer Prod., Inc.,* 68 F.3d 525, 530 (1st Cir. 1995).

The Court is to indulge every reasonable inference in favor of allowing the lawsuit to proceed. *North Bridge Assoc., Inc. v. Boldt,* 274 F.3d 38, 40 (1st Cir. 2001).

## *III. Argument*

Accepting the averments in the Amended Complaint as true, the Motion to Dismiss is properly denied.

### *A. Defendants' reliance on the "bald assertions" doctrine is misplaced.*

Throughout its memorandum, the Town repeatedly urges this Court to treat the allegations of the Amended Complaint as "bald assertions." If the Town were correct in this characterization, the Court would indeed be required to dismiss such "bald assertions" as irrelevant to the Court's consideration. Such assertions in a complaint, "*if they stand alone*, are a danger sign that the plaintiff is engaged in a fishing expedition." *DM Research Inc. v. College of American Pathologists,* 173 F.3d 53, 55 (1st Cir. 1999) (emphasis added).

However, in the plaintiffs' Amended Complaint, the assertions do not stand alone.

For the purposes of their memorandum, the Town has repeatedly taken an allegation from the various claims in the Amended Complaint and isolated it, as if there were no other references, allegations or averments in the Amended Complaint that supports them.

For example, the Town states that "Plaintiffs make the 'bald assertion' that they are intended third-party beneficiaries of the Water Agreement without any factual allegations to support this legal conclusion." *Town's Memorandum*, at 9. However, earlier in the Amended Complaint, plaintiffs point

the Town to the specific section of the Water Agreement that provides the factual predicate on which the allegation is that the plaintiffs are indeed third-party beneficiaries is based, and shows how that provision has been breached. *Amended Complaint,* ¶ 19 (reciting Paragraph 14 of the Water Agreement), *Amended Complaint,* ¶¶ 67, 68 (alleging breach by unreasonably delaying or withholding consent to amendment). "The complaint should include a short and plain statement of the claim showing that the pleader is entitled to relief, so it need not include evidentiary detail." *DM Research Inc.,* 173 F.3d at 55.

Likewise, the Town asserts that the claims under the state and federal Equal Protection Clauses should be dismissed because of the plaintiffs' failure to present evidence of specific instances of similarly situated person or entities receiving different and more favorable treatment. *Town's Memorandum,* at 19. Even though a well-pleaded complaint does not need to "include evidentiary detail," the Amended Complaint indeed recites that which the Town says it does not. *Compare Amended Complaint,* ¶ 20 (Town amended Water Agreement in previous circumstances) *with Amended Complaint,* ¶ 86, 92 (identifying the mentally disabled and citizens of low and moderate income as citizens who have been treated unlike others).

Whereas the "bald assertions" doctrine is logical in its policy, it has no application to the plaintiffs' Amended Complaint.

### *B. The Amended Complaint states a claim under the Rhode Island Open Meetings Act.*

This Court's consideration of the Motion to Dismiss is whether there is *any* set of facts under these allegations where the plaintiffs may prevail, regardless of whether the complaint "includes evidentiary detail." *DM Research Inc.,* 173 F.3d at 55.

The Amended Complaint's allegations relating to the alleged violation of the Open Meetings Act include:

> 58. On August 20, 2007, however, Thompson, reading from scripted remarks prepared prior to the Open Meeting of the Town Council, moved the Town Council to essentially table WDC's request for the execution of the WDC Amendment.
>
> 60. The Mental Health Center, WDC and the Mental Health Advocate restate and incorporate by this reference the allegations contained in Paragraphs 1 through 44 of this Complaint as if more fully set forth herein.
>
> 61. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.
>
> 62. The scripted remarks presented by Thompson at the Town Council's August 20, 2007, meeting suggests that one or more members of the Town Council had developed the proposal outside the open and public manner required by R.I. GEN. LAWS § 42-46-1, et seq.
>
> 63. To the extent that such deliberation occurred outside the open and public manner required by R.I. GEN. LAWS § 42-46-1, et seq., such deliberation violates the Open Meetings Act.
>
> 64. As a result of such violation, the Mental Health Center and WDC have suffered damages.

*Amended Complaint,* ¶ 58, 60-64. These allegations fall squarely in the statutory parameters of the Rhode Island Open Meetings Act, R.I. GEN. LAWS § 42-46-1, *et seq.*, which requires that "every meeting of all public bodies shall be open to the public unless closed pursuant to §§ 42-46-4 and 42-46-5." R.I. GEN. LAWS § 42-46-1.

As alleged in Paragraphs 61 and 62, the plaintiffs suggest that Councilperson Thompson and others on the Town Council prepared the scripted remarks – and deliberated the fate of the Mental Health Center's and WDC's request for an amendment to the Water Agreement – outside an open meeting of the Town Council.[1] *Amended Complaint,* ¶ 61-63.

---

[1] If there *was* a clandestine collaboration of council members that lead to the Councilperson Thompson's scripted remarks, the burden would, in fact, shift to the Town to justify the situation. R.I. GEN. LAWS § 42-46-14 ("In all actions brought under this chapter, the burden shall be on the public body to demonstrate that the meeting in dispute was properly closed pursuant to, or otherwise exempt from the terms of this chapter.")

The Town apparently rests on the concept that so long as a quorum did not convene, there could not be a violation of the Open Meetings Act. *Town's Memorandum,* at 7 ("it is not an OMA violation for one or two Town Council members to develop a proposal outside of a public meeting."). However, it *is* a violation of the Open Meetings Act for three members of the Town Council to have deliberated Councilperson Thompson's scripted remarks prior to the meeting of the Town Council – a set of facts upon which the plaintiffs prevail if they can prove it.

It is likewise a violation if the three members deliberate in sequence, even if not by gathering together. *In re: Cranston City Council,* ADV OM 04-04, 2004 WL 3557538 (April 16, 2004) ("For example, on a five-member Council where three members constitute a quorum, if Councilman A discusses the report with Councilman B, and Councilman B then discusses the report with Councilman C, a rolling quorum would have conducted a discussion subject to the OMA."). Thus, there is a *second* set of facts upon which the plaintiffs may prevail.

The Town criticizes the Amended Complaint – and seeks its dismissal – because it does not specifically allege that the Town Councilpersons violated the Open Meetings Act by meeting in secret, or by meeting as a rolling quorum. *Town's Memorandum,* at 7. But at the Rule 12(b)(6) stage, this argument fails. Quite simply, the plaintiffs do not yet know the exact means by which the Town violated the Open Meetings Act, as discovery has not yet been conducted. But the plaintiffs have demonstrated two theories under which discovery can prove them right.

The Town's position defies long-standing Rule 12(b)(6) jurisprudence, and would require complaints to be pleaded with factual specificity. Essentially, the Town's position precludes the use of circumstantial evidence in determining whether *any* claim can be alleged, not just a claimed violation of the Open Meetings Act. If the Town's position were endorsed, the only claim under the Open Meetings Act that could survive a Rule 12 motion would be one were the violation

occurred in the presence of others. If council members (these or any others) collaborated in violation of the Open Meetings Act, certainly members of the public would not be there.

Plaintiffs have every intention of discovering the nature and extent of the preparation of Councilperson Thompson's scripted remarks. This discovery will occur whether the Open Meetings Act claim is dismissed at this time, presumably without prejudice, or survives the Motion to Dismiss. This discovery will reveal whether the plaintiffs' allegations – well-pleaded as they are – are meritorious. If they are not, the claim will be ripe for dismissal on its merits.

But the allegations of the Amended Complaint *state* a claim. Thus, the Motion to Dismiss this claim is properly denied.

### ***C. The Amended Complaint states a breach-of-contract claim.***

The Town makes a "bald assertion" of its own when it then concludes that because the Water Agreement makes "no mention" of the Mental Health Center or WDC, they cannot be intended third-party beneficiaries.

As the Town correctly points out:

> a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties, and
> …
> (b)[2] the circumstances indicate that the promise[e] intends to give the beneficiary the benefit of the intended promise.

RESTATEMENT (SECOND) CONTRACTS, § 302.

There is no requirement in § 302 that the intended third-party beneficiaries be *mentioned* in the Water Agreement. "Circumstances which clearly indicate that performance under the contract is for the benefit of a third party" give rise to a finding of status as a third-party beneficiary. *Foricer v. Cardello,* 173 B.R. 973, 984 (D.R.I. 1994).

[2] The plaintiffs acknowledge that § 302(a) does not apply.

It is inconceivable to characterize the Water Agreement as anything other than a contract between the Town and Richmond for the benefit of third parties – individual residents of Hopkinton and, in this case, the entities which can provide them with affordable housing. More specifically, the Water Agreement is for the benefit of residents of Hopkinton who can be served by an extension of Richmond's water line.

The Town and Richmond anticipated amendments to the Water Agreement – likely even the inclusion of additional residents that may have water provided to them pursuant to the Agreement – and described the terms under which such amendments were to be considered:

> No modifications, amendments or supplements to this agreement shall be effective for any purpose unless in writing signed by each party. Whenever any approval or consent of a party hereto must be obtained, pursuant to any provision of this agreement, such approval or consent shall not be unreasonably withheld or delayed.

*Amended Complaint,* ¶ 19. Richmond requested an amendment to the Water Agreement – for the benefit of the plaintiffs – and Hopkinton withheld its consent, or, at the very least, has, to date, unreasonably delayed it.[3] *Amended Complaint,* ¶¶ 42, 45, 58.

At later stages of this litigation, the Mental Health Center and WDC must prove that "recognition of a right to performance is appropriate to effectuate the intention of the parties, and … the circumstances indicate that the promisee intends to give the beneficiary the benefit of the intended promise." *Id.* But at this stage of the litigation, the question is not what the plaintiffs will *ultimately* be able to prove, it is a question of what they *may* be able to prove.

A finder of fact *can* certainly find that the parties to the Water Agreement intended to bestow the contractual promise of obtaining Richmond water upon residents of the Town that may have a need – and a pledge by Richmond – to receive it. It is axiomatic that in that event, the same finder of fact *can* conclude that the Town's withholding of its consent to amend the Water Agreement at no cost to the Town was unreasonable.

[3] The Town's formal action on the requested amendment to the Water Agreement was to "table it." *Complaint,* ¶ 43.

The Town is correct – there is no provision that requires the Town to consent to any and all proposed amendments to the Water Agreement. *Town Memorandum,* at 13. But the Town ignores that whenever "*any* approval or consent of a party hereto must be obtained, pursuant to any provision of this agreement, such approval or consent shall not be unreasonably withheld or delayed." *Water Agreement,* ¶ 14 (emphasis added).[4]

The consent sought here was an amendment to the Water Agreement. The Town has unreasonably withheld and/or delayed their consent. Therein lies the breach.

The allegations of the Amended Complaint speak for themselves:

> 67. The refusal of the Council Members, individually and in their official capacities, to vote to execute the WDC Amendment to the Water Agreement is a breach of the Water Agreement, in that their consent has been unreasonably refused and/or delayed.
>
> 68. The Town's refusal to execute the WDC Amendment to the Water Agreement is a breach of the Water Agreement, in that the Town's consent has been unreasonably refused and/or delayed.

*Amended Complaint,* ¶¶ 67-68.

These portions of the Amended Complaint refute the misstatement in the Town's memorandum that "plaintiffs do not reference the provision of the Water Agreement that requires Defendants to amend the Agreement in these particular circumstances." *Town Memorandum,* at 13.

…and the misstatement that "such a provision does not exist." *Id.*

... and that plaintiffs cannot sustain their breach of contract claim. *Id.*

The Town goes to great lengths to posit the plaintiffs' request for the execution of the WDC Amendment pushes the Town down a slippery slope that would require it to amend the Water Agreement whenever a party obtains an easement across a lot serviced by the Richmond water extension. Of course, this is a patently ridiculous extrapolation. It is not the obtaining of the easement alone that makes the Town's conduct unreasonable, unconscionable and unconstitutional.

[4] The Town attached the Water Agreement to their memorandum in support of the Motion to Dismiss.

It is that the Town knew all along that this is *exactly* how water was going to be brought to the property, that Richmond has approved delivering water to the property, that the Town itself trumpeted this property in its Affordable Housing Plan,[5] and that the Town's own planning authorities approved the proposal each and every step of the way.

The Town also relies on the language in the original Water Agreement limiting its benefit to 65 users. *Town's Memorandum,* at 11-12. This argument, too, is a patently red herring. The purpose of amending agreements is to change their terms – much like the Town did in 1993 – including the number of users served. *Amended Complaint,* ¶¶ 20-22.

Thus, as to the breach of contract claim, the Motion to Dismiss is properly denied.

### *D. The Amended Complaint states a substantive due process claim.*[6]

"Substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest." *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31-32 (1st Cir. 1991).

---

[5] In *Sullivan, et al. v. Carney, et al.,* No. WC-2005-744 (R.I. Super. Ct., February 4, 2008), the Rhode Island Superior Court opined on the question of the binding nature of Affordable Housing Plans prepared by the various municipalities in an effort to meeting the obligation to provide a minimum number of affordable housing units to their citizens imposed by Chapter 53 of Title 45 of the Rhode Island General Laws. In *Sullivan,* the Superior Court struck an amendment to the Charlestown Zoning Ordinance that was not in conformity with the Town's Comprehensive Plan and Affordable Housing Plan. *Sullivan v. Carney,* No. WC-2005-744, February 4, 2008, slip op. at 20. "As part of the Comprehensive Plan, the affordable housing plan is not simply an innocuous general policy statement. Rather, the affordable housing plan is just as legally binding as the rest of Charlestown's Comprehensive Plan and may not be discarded or ignored." *Id.* at 16 (internal citation omitted).

In ruling against the Town of Charlestown, the *Sullivan* court ordered that the conduct in violation of the Affordable Housing Plan was so egregious that it required Charlestown to pay the plaintiffs' attorneys' fees.

The Amended Complaint in *this* case alleges that the Hopkinton's Affordable Housing Plan *specifically* includes and references the development anticipated by Women's Development Corp. and South Shore Mental Health Center. *Complaint,* ¶ 44. Accepting this fact as true, which the Court does at the Motion to Dismiss stage, *Figueroa v. Rivera,* 147 F.3d 77 (1st Cir. 1998), a fact-finder can certainly determine that the Town's refusal to amend the Water Agreement for the benefit of this affordable housing project is inconsistent with the Town's "legally binding" Affordable Housing Plan. *Sullivan,* slip op. at 16. As such, there is yet another set of facts on which the Mental Health Center and WDC can prevail on their Complaint.

[6] The headings in the Town's memorandum allege that the Town is somehow "entitled to judgment" on the constitutional claims raised. As "entitlement to judgment" is irrelevant to Rule 12 motions, the plaintiffs will focus instead on whether the Complaint states a claim as to these various constitutional arguments.

The concept of "substantive due process" "guards against arbitrary and capricious government action." *Kaveny v. Town of Cumberland Zoning Board of Review,* 875 A.2d 1, 10 (R.I. 2005) (citations omitted). To establish a violation of a party's substantive due process, one must show that the challenged action is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Id.*

The Town's first argument is that the plaintiffs have failed to "establish" a property interest. Whereas the obligation to "establish" such an interest may become relevant later, the obligations on the plaintiffs at this stage are merely to allege that there has been a breach of one.

The Rhode Island General Assembly has codified that "the right to affordable, accessible, safe and sanitary housing" itself is "necessary to assure the health, safety and welfare of all citizens of this state." R.I. GEN. LAWS § 45-53-2. It is this right that has been denied by the Town, and the Town Councilpersons, and is set forth as having been denied in the Amended Complaint. *Amended Complaint,* ¶¶ 75-80. It also is the right that answers the Town's rhetorical questioning of the property interest involved in this case.

The Town tries to cast this case in the light of a denied zoning permit or project application. *Town's Memorandum,* at 15-16 (excerpting *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31-32 (1st Cir. 1991)). That is *not* what has happened here.

As alleged in the Amended Complaint, the Town's various planning agencies had already approved the development. *Amended Complaint,* ¶¶ 37, 47, 57. The only element missing here was the WDC Amendment, an amendment to the Water Agreement that would have come at no cost to the Town, *Amended Complaint,* ¶ 43, and an amendment that, when provided, would have fulfilled *the Town's* own representation to the State of Rhode Island that *this exact development* would be included in the Town's efforts to meet its requirement to provide affordable housing in the Town. *Amended Complaint,* ¶ 29.

Although it is clear to the plaintiffs, it (arguably) remains whether this conduct is the "truly horrendous situation" the Town would have this Court require to find a substantive due process violation. *Town's Memorandum,* at 15-16 (citing *Nestor Colon Median & Sucesroes, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir, 1992) (reviewing summary judgment, not Rule 12, decision).[7]

But that question of fact is not properly resolved on Rule 12 grounds. Thus, the Motion to Dismiss must be denied.

***E. The Amended Complaint states an equal protection violation.***[8]

"Where it has not been shown that a fundamental right has been affected or that [government action] sets up a suspect classification, a statute will be invalidated on equal protection grounds only if the classification established bears no reasonable relationship to the public health, safety or welfare." *Sweetman v. Town of Cumberland,* 364 A.2d 1277, 1288 (R.I. 1976) (examining zoning change).

The Town suggests that the plaintiffs have failed to allege facts sufficient to meet this standard, and have failed to "identify others who were similarly situated or provide instances of different treatment." *Town Memorandum,* at 19 (Amended Complaint "is silent" on what other similarly situated individuals or entities were treated differently").

The Amended Complaint, however, is clear, and the Town is in error.

There is a Water Agreement between Richmond and The Town. *Amended Complaint,* ¶¶ 16-19.

The Town had previously agreed to amend the Water Agreement to include additional lots not originally included within the scope of the Water Agreement. *Amended Complaint,* ¶ 20.[9] This

---

[7] It must be noted that the plaintiffs filed this case in state court, and that the Town opted to remove it to this Court, yet the Town now cites First Circuit case law for the proposition that the state courts are perhaps a more appropriate forum. *Town's Memorandum,* at 15-16 (*citing Nestor Colon Medina & Sucesores, Inc.,* 964 F.2d 32, 45 (1st Cir. 1992)).

[8] *See supra, note 6.*

[9] Paragraph 20 of the Amended Complaint, which points out how the Town consented to a prior amendment before denying to execute the WDC Amendment, is noticeably absent from the Town's discussion. *Town's Memorandum*, at 15.

amendment was for the benefit of the benefit of others unaffected by mental disabilities or other handicaps. *Amended Complaint,* ¶ 92.

When Richmond asked for an a second amendment to the Water Agreement, to provide water to the affordable housing development contemplated by the Mental Health Center and WDC – and already approved by all of the Town's own planning agencies – the Town tabled the request indefinitely. *Amended Complaint,* ¶ 58.

The plaintiffs do not need to allege more to survive a motion to dismiss. "The Amended Complaint should include a short and plain statement of the claim showing that the pleader is entitled to relief, so it need not include evidentiary detail." *DM Research Inc.,* 173 F.3d at 55. It is against this standard that the Town's argument fails. *Town's Memorandum*, at 20 (faulting the plaintiffs for failing to present specific "evidence" in the Amended Complaint).

The Amended Complaint alleges – and the evidence will later show – that it is only because that this parcel is to become affordable housing, including housing for the mentally disabled, that Hopkinton has indefinitely tabled the WDC Amendment. The Amended Complaint certainly outlines – and sufficiently alleges – that the plaintiffs want their project to be treated equally with those lands within the purview of the Water Agreement, whether originally or, perhaps more appropriately, by amendment.[10]

The Town tries to capitalize on language from *Rubinovitz v. Rogato,* 60 F.3d 906, 910 (1st Cir. 1995) (finding for the defendants where the plaintiffs "neither identify others who were similarly situated, nor do they identify any instances of disparate treatment"). However, as the Town fails to acknowledge, *Rubinovitz* was decided on *summary judgment* grounds, where the parties, after the

[10] Although wholly irrelevant for Rule 12 consideration, the plaintiffs are prepared to prove – and it will be undisputed by the Town – that the Town's decision to table the request for the WDC Amendment was because the Town Council thought it to be more appropriate to simply to defer to prior Town Councils. Of course, under this line of reasoning, Prohibition would have remained in effect. *Compare* U.S. CONST. amend. XVIII *with* U.S. CONST. amend. XXI. The plaintiffs proffer that this determination does not pass even the "rational basis" test in constitutional jurisprudence.

opportunity to undertake discovery, have an obligation to come forth with facts to support their allegations. *Rubinovitz* did *not* dismiss a complaint on Rule 12 grounds. This is equally evident in the Town's discussion of the "second prong" of the equal protection analysis it proffers, claiming that the Amended Complaint should be dismissed because it fails to provide "evidence" of selective treatment. *Town's Memorandum*, at 20-21.[11]

As with the Town's other arguments, this argument is misplaced. Perhaps it may become relevant later in these proceedings. But for now, it is clear that the Amended Complaint *states* a claim upon which relief may be granted.

***F. The Amended Complaint states a claim for a declaratory judgment.***[12]

The Town's terse argument that the plaintiffs have failed to state a claim as to their request for a declaratory judgment justifies an equally terse response.

Section 9-30-2 of the Rhode Island General Laws provides a cause of action for declaratory judgment to "[a]ny person interested under a … written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a … contract, … may have determined any question of construction or validity arising under the …contract … and obtain a declaration of rights, status, or other legal relations thereunder." R.I. GEN. LAWS § 9-30-2; *see also* 28 U.S.C. § 2201 (in a case of actual controversy within its jurisdiction, except with respect to certain exempted claims, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.).

Thus, in order to *state a claim* for a declaratory judgment, the plaintiffs need to show only that there is a "written contract or other writings constituting a contract," and that they are "interested"

[11] The Town argues that neither the mentally disabled nor the poor are "suspect classes." Even if the Town is correct, the Motion to Dismiss must still be denied. Whether these two groups are "suspect classes" affects the scrutiny the Town's action is measured against, not whether the Complaint states a claim upon which relief may be granted.
[12] *See supra, note 6*.

under that contract. R.I. GEN. LAWS § 9-30-2. In the alternative, the plaintiffs need to show merely that their "rights, status and other legal relations are affected by" a contract. *Id.* Once they do that, a claim for declaratory judgment is well-pleaded, and must survive a motion to dismiss.

Under the terms of the Water Agreement, the Town cannot *unreasonably* withhold or delay its consent to an amendment. The Town thinks otherwise. There is obviously a need for a declaration of the plaintiffs' right to an amendment to the Water Agreement.

That is exactly what has been pled:

> 72. WDC and the Mental Health Center are parties interested in the Water Agreement.
>
> 73. Because Richmond has requested an amendment to the Water Agreement, and because the Town has withheld and delayed its consent to the execution of the WDC Amendment, there is a question of construction of the Water Agreement.

For these reasons, the Motion to Dismiss, as to the request for declaratory judgment, must be denied.

### *G. The Amended Complaint states a claim for a writ of mandamus.*[13]

"A writ of mandamus is an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law. A ministerial function is one that is to be performed by an official in a prescribed manner based on a particular set of facts without regard to or the exercise of his own judgment upon the propriety of the act being done. Once these prerequisites have been shown, it is within the sound discretion of the Superior Court justice to ultimately issue the writ." *New England Developm., LLC v. Berg,* 913 A.2d 363 (R.I. 2007) (internal citations omitted).

[13] *See supra, note 6.*

The Town's arguments as to the issuance of a writ of mandamus feature its continued mistaken considerations of Rule 12 jurisprudence. Even though they are combined here, they still lead to the same unavailing result as when each is argued singly.

First, the Town's "bald assertion" mantra returns, ignoring yet again that the Amended Complaint must be taken as a whole for purposes of Rule 12 considerations, not individual allegations. *Town's Memorandum,* at 24 ("Plaintiffs simply make the unsupported allegation that they have a clear legal right – and the Town has a ministerial duty – to the execution of the WDC Amendment.").

As the entire Amended Complaint lays out, the Water Agreement requires the Town to give consent to the Richmond request for an amendment unless it is reasonable for the Town to withhold or delay doing so. *Water Agreement,* ¶ 14 ("Whenever any approval or consent of a party hereto must be obtained, pursuant to any provision of this agreement, such approval or consent shall not be unreasonably withheld or delayed.").

Ultimately, this case will result in the determination as to whether this right to relief is "clear." If it is, then a claim for the issuance of a writ of mandamus is appropriate. If it is not "clear," then the request for a writ of mandamus will be denied. But the stage for that determination is not an examination of the four corners of the Amended Complaint.

Second, the Town proffers that the plaintiffs have not articulated the source of this clear legal right. Of course, the plaintiffs have – the language of the Water Agreement itself which requires approval of requests from a party to the agreement unless withholding or delaying the request is unreasonable. *Water Agreement,* ¶ 14.

The Town provides a litany of factors that the Town may have considered in deciding whether to execute the WDC Amendment:

- the facts behind the proposed amendment;
- the factors – pro and con – of acceptance;

- •the repercussions that may flow from [its] decision;
- •what [e]ffect the amendment will have on the Town;
- •whether it creates a precedent that may affect the Town in the future; and
- •whether the amendment is fair to other Town landowners.

*Town's Memorandum*, at 25. Ironically, the Town considered *none* of these factors – at least in any open meeting – in tabling the plaintiffs' request.[14]

In short, at the end of this case, the Court will issue a decision as to whether the plaintiffs have a right to a writ of mandamus. If they do, one will issue. If they do not, one will not issue. A Motion to Dismiss pursuant to Rule 12, however, tests the *sufficiency* of the allegations of the Amended Complaint, and not their ultimate merits, or whether one side will eventually be entitled to judgment.

### *H. The Amended Complaint states a claim for individual liability.*[15]

Despite the Town's unsupported plea to this Court to dismiss the individual Town councilpersons from this action because the claim does not relate to "self-dealing and other improper conduct," the Motion to Dismiss the claims of individual liability must be denied.

"Damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Scheuer v. Rhodes,* 416 U.S. 232, 238 (1974). "In some situations, a damage remedy can be as effective a redress for the infringement of a constitutional right as injunctive relief may be in another." *Id.* (denying motion to dismiss, relying on what is claimed but not yet established). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).

---

[14] As mentioned earlier, and as will be undisputed, the Town Council tabled the request out of deference to the decision of prior Town Councils. This "deference," which has no place in democratic politics, is merely a ruse for the Town's desire to keep this affordable housing project out of its backyard.

[15] *See supra, note 6.*

*Scheuer* was later abrogated by the United States Supreme Court. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "*Harlow* articulated the test that still controls today: 'government officials performing discretionary functions ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Volberg v. Pataki,* 917 F. Supp. 909, 918 (S.D.N.Y. 1996).

If the individual defendants are found to have acted "in an arbitrary manner, grossly abusing the lawful powers of [their] office," individual liability may accrue. *Jones v. State of Rhode Island,* 724 F. Supp. 25, 29 (D.R.I. 1989) (granting motion to dismiss based on insufficient allegations in complaint, and not on concept of individual liability).

The Amended Complaint contains allegations that the individual defendants' conduct rises to such a level. *See, e.g., Amended Complaint,* ¶ 77 ("The decision of the Town and the Council Members, individually and in their official capacities, to not consider, and not execute, the WDC Amendment is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.").

Whether the councilpersons' conduct meets the *Harlow* or *Jones* tests is a question of fact, one on which the plaintiffs *may* prevail. Thus, the individual defendants' motion should be denied.

### ***I. The Amended Complaint states a claim under the Fair Housing Amendments Act.***

The Town criticizes the Amended Complaint for its failure to include "direct evidence" of the disparate treatment suffered by the putative residents of the affordable housing units. *Town's Memorandum,* at 27. Ironically, this criticism comes immediately following the Town's acknowledgment that proof of a violation of the Fair Housing Act can be by indirect evidence. *Id.*[16]

---

[16] The Town then continues to urge this Court to consider this case as a denial of a zoning application so that it may apply Ninth Circuit jurisprudence. *Id.* at 28.

Yet again, the Town makes its argument presuming that all the facts have been gathered. The question before the Court at this time is whether there is *any* set of facts under these allegations where the plaintiffs may prevail, regardless of whether the complaint "includes evidentiary detail." *DM Research Inc.,* 173 F.3d at 55.

Unquestionably there is – the plaintiffs may prevail on either a theory of discriminatory intent, if that is what the evidence shows, or on a theory of disparate impact, an analysis which looks "only at the effect of the … actions, not the motivations." *Caron v. Pawtucket,* 307 F. Supp. 364, 369 (D.R.I. 2004)

The Town uses *Caron* in support of its argument that the Amended Complaint itself does not allege sufficient "evidence" of "discriminatory intent." *Town's Memorandum,* at 27. However, *Caron* evaluated the non-moving party's evidence upon the filing of a Motion for Summary Judgment, when (presumably) the parties had an opportunity to discover the relevant evidence. *Id.,* at 369-70 (criticizing the non-moving party's quantum of evidentiary proof on summary judgment, as opposed to evaluating the complaint); *see also Gamble v. Escondido,* 104 F.3d 300 (9th Cir. 1997) (also cited by the Town, and also a summary judgment motion).

The Town's reliance on *Gamble* for the proposition that their needs to be a temporal nexus between the Town's actions in 1993 and 2007 fails as well. According to *Gamble,* the temporal nexus is required in order to establish a "disparate treatment" claim. It is inapplicable to a "disparate impact" claim. *Gamble,* 104 F.3d 305.[17]

Finally, even the Town's lead case – *Gamble* – acknowledges that a plaintiff may sue under the Fair Housing Act Amendments "if a local municipality refuses to make reasonable accommodations for handicapped housing." *Gamble,* 104 F.3d at 305. Certainly, the Amended

[17] The Town's entire discussion of the McDonnell-Douglas paradigm demonstrates the difference between Motions to Dismiss and Motions for Summary Judgment. The McDonnell-Douglas paradigm evaluates sufficiency of the *evidence,* not the sufficiency of the *pleadings.*

Complaint sets forth a myriad of facts alleging that the failure to execute the WDC Amendment is the Town's failure to make a reasonable accommodation for the benefit of the mentally disabled.

### *IV. Conclusion*

Perhaps the Town's introduction sheds light on its failure to consider the ramifications of its conduct when it says that the WDC Amendment "would benefit two of the Plaintiffs in a land development project they wish to locate in Hopkinton." *Town's Memorandum,* at 1. This is not just "a land development project." It is a project that would provide housing to mentally disabled individuals living on their own, and provide affordable housing to those who need it. Significantly, however, it would provide the Town with units it needs to live up to its own representations to the State of Rhode Island as to how it intends to achieve its statutory affordable-housing requirements. The Town's insinuation that this is nothing more than a "land development project" ignores not only the realities of the project itself, but the substance behind the constitutional claims.

The Town's memorandum purports to be a memorandum in support of a motion to dismiss pursuant to Rule 12(b)(6). It then reads like a memorandum in support of a motion for summary judgment, or, even worse, a closing argument to the Court, taking the position that the plaintiffs have all the information they will obtain from discovery and arguing that they cannot prevail.

In the present posture, however, the plaintiffs' obligation is only to state claims that, if proven true, are actionable.

The plaintiffs have done exactly that. The onset of discovery, and the information learned at that time, will determine whether the plaintiffs' claims *will* succeed.

The only question for the Court at *this* time is whether they *can* succeed.

And they can.

For these reasons, the plaintiffs respectfully request that the Motion to Dismiss be denied.[18]

SOUTH SHORE MENTAL HEALTH CENTER, INC., et al.
By their attorney,

/s/ Douglas J. Emanuel

Douglas J. Emanuel (5176)
CHACE RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: July 14, 2008

***CERTIFICATE OF SERVICE***

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 14, 2008.

/s/ Douglas J. Emanuel

[18] To the extent that the Motion to Dismiss is granted, even in part, plaintiffs would request the opportunity to replead to address any deficiencies the Court identifies. *Fundi v. Citizens Bank of Rhode Island,* 2007 WL 2407106 (D.R.I. August 22, 2007) (granting plaintiff 30 days to replead following granting of motion to dismiss).